GRIESEDIECK BROS. BREWERY CO. v. MOORE, Internal Revenue Collector, et al.

(District Court, E. D. Missouri, E. D.   November 21, 1919.)

No. 5207.

1. CONSTITUTIONAL LAW ⬤⟶45—QUESTION OF CONSTITUTIONALITY OF ACTS OF CONGRESS IS FOR THE COURTS.

    Where the constitutionality of an act of Congress is challenged, the question for determination is one for the courts, and the jurisdiction of the court to determine the same cannot be successfully attacked.

2. INJUNCTION ⬤⟶85(2)—COURTS HAVE JURISDICTION TO ENJOIN PUBLIC OFFICER FROM ENFORCING UNCONSTITUTIONAL ACTS.

    Courts have jurisdiction to enjoin public officers from enforcing unconstitutional acts, for such officers, in enforcing such acts, become mere unofficial intermeddlers, and are not entitled to protection as officers.

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **INTOXICATING LIQUORS** ⬥═6—**RESERVED POWERS OF STATES TO REGULATE.**

In time of peace, and in the absence of the Eighteenth Amendment, the states have exclusive power to regulate the manufacture and sale of intoxicating liquors; such power falling within the police power reserved to the states.

4. **INJUNCTION** ⬥═85(2)—**ENJOINING ENFORCEMENT OF NATIONAL PROHIBITION ACT BEFORE PROHIBITORY AMENDMENT BECAME EFFECTIVE.**

In view of the fact that the Eighteenth Amendment provided a period of one year after ratification before it should go into effect, and that active hostilities had ceased and the armed forces had been demobilized at the time Congress passed the National Prohibition Act, which contained provision to carry into effect the previously enacted War-Time Prohibition Act, *held*, the Eighteenth Amendment not yet having become effective, that enforcement of those provisions of National Prohibition Act designed to carry into effect the War-Time Prohibition Act, and which prohibited the sale of 2.75 per cent. beer, manufacture of which was allowed by previous acts, will, in view of the injury, be temporarily enjoined pending determination of the constitutionality of such act.

In Equity. Suit by the Griesedieck Brothers Brewery Company against George H. Moore, Collector of Internal Revenue, and another, consolidated with suits by other brewery companies against the same defendants. On motion of defendants to dismiss for want of jurisdiction and equity, and on application of plaintiffs for temporary injunction. Injunction pendente lite granted.

Edward C. Crow, John T. Fitzsimmons, Charles A. Houts, Edgar R. Rombauer and W. K. Koerner, all of St. Louis, Mo., for plaintiff.

Walter L. Hensley, U. S. Atty., and Benj. L. White, Asst. U. S. Atty., both of St. Louis, Mo., for defendants.

POLLOCK, District Judge. The above entitled and numbered suit arose out of the consolidation, for the purpose of hearing and decision, of five like suits, brought, respectively, by the Independent Breweries Company, St. Louis Brewing Association, Griesedieck Bros. Brewery Company, Schorr-Kolk-Schneider Brewing Company, and Louis Obert Brewing Company, against defendants, the collector of internal revenue for the First district of the state of Missouri, and the United States attorney for the Eastern district of the state of Missouri, to restrain and enjoin said defendants from enforcing or attempting to enforce against complainants certain provisions of an act of Congress entitled the National Prohibition Act, approved October 28, 1919 (chapter 85). The specific ground on which such injunctive relief is demanded is the alleged want of constitutional power in Congress to enact said legislation; therefore the act, in so far as challenged by complainants, affords defendants no warrant of law to do the injurious acts by them threatened to be done unto complainants in their persons and property rights, as set forth in the bills of complaint.

To the several complaints so filed defendants have appeared, and interpose separate motions to dismiss for want of jurisdiction in the court to entertain them, and, further, for want of equity. The several complainants have applied for a temporary injunction to protect the status of the parties until the constitutional validity of the act may

⬥═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

be finally determined and decreed. On said motions and applications the consolidated cause stands argued and submitted for decision on the pleadings, motions, and proofs in the form of affidavits filed by the complainants.

From the pleadings and proofs certain facts are deducible beyond all controversy. Complainants, each and all, were on the day said act by its terms became effective engaged in brewing, manufacturing, selling, and distributing within the jurisdiction of this court certain beverages containing not to exceed 2¾ per cent. alcohol, in pursuance of and in strict conformity with the provisions of the acts of Congress of August 10, 1917 (40 Stat. c. 53), and of November 21, 1918 (40 Stat. c. 212), and all other acts of the Congress, and in strict compliance with and conformity to all the laws of the state of Missouri, and under permission or license received from the lawfully constituted authorities of the state of Missouri. In the conduct of said lawful business under the laws of the state complainants engaged many workmen, employés, and laborers at vast expense, employed vast amounts of capital invested in buildings, machinery, materials, and products specially devoted to the conduct and carrying on of said business, and for the purpose of obtaining the permission of and a license from the state of Missouri to engage in and conduct said business. Complainants for years had been, and were at the time said act became operative according to its terms, compelled to and did pay to the state large amounts of money by way of revenues collected and used by the state. Such beverages so being manufactured by the complainants are not in truth and fact intoxicating liquors or drinks, as the word "intoxicating" is defined or employed in its common acceptation among men, or as defined or employed in scientific language or treatise on the subject. That the enforcement by defendants against complainants and their properties, plants, and apparatus so employed of the provisions of said act of October 28, 1919, in so far as applicable to the period of one year after ratification of the Eighteenth Amendment to the national Constitution by the states, will operate to confiscate the property of complainants, will deprive complainants of the use, benefit, and value of the same without just compensation and without due process of law, etc. Therefore complainants pray injunctive relief against the threatened acts of irreparable injury, loss, and damage provided for in said portion of the act.

[1, 2] Coming, now, first to a consideration of the separate motions of defendants filed against the complainants to dismiss the same for want of jurisdiction, it may be said:

It is perfectly obvious this court has jurisdiction to hear and determine the question raised as to the constitutional validity of the provisions of the act of Congress challenged, for such issue is a judicial, and not a legislative, question, and on the decision of this one issue depend all others in this case; for, if the act in so far as challenged be within the constitutional power of the Congress to enact into law, the complainants, and all others, including the defendants, must obey and enforce its terms. On the contrary, if the provisions of the act challenged by complainants are found and decreed as a mat-

ter of law to lie without and beyond the constitutional power of the Congress to enact into law, then the act is not a law. It has no office to perform, has no binding force or effect upon any citizen of the republic, and defendants in enforcing it, or in attempting or threatening to enforce its provision against complainants or their property and property rights, to their irreparable loss, injury, and damage, are not officers of the law, acting within the scope of their lawful authority, but are, when so engaged, mere private individuals, volunteers, and intermeddlers, whose injurious acts ought to and in justice should be restrained. To such extent and end go all the authorities on the subject. Osborn v. United States Bank, 9 Wheat. 737, 6 L. Ed. 204; Dobbins v. Los Angeles, 195 U. S. 223, 25 Sup. Ct. 18, 49 L. Ed. 169; Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Wes. Un. Tel. Co. v. Andrews, 216 U. S. 165, 30 Sup. Ct. 286, 54 L. Ed. 430; Herndon v. Chi., Rock Island & Pac. Ry., 218 U. S. 135, 30 Sup. Ct. 633, 54 L. Ed. 970; Philadelphia Co. v. Stimson, 223 U. S. 605, 32 Sup. Ct. 340, 56 L. Ed. 570; Truax v. Raich, 239 U. S. 33, 36 Sup. Ct. 7, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283; Wilson v. New, 243 U. S. 332, 37 Sup. Ct. 298, 61 L. Ed. 755, L. R. A. 1917E, 938, Ann. Cas. 1918A, 1024; Hammer v. Dagenhart, 247 U. S. 251, 38 Sup. Ct. 529, 62 L. Ed. 1101, Ann. Cas. 1918E, 724; Jacob Hoffman Brewing Co. v. McElligott, 259 Fed. 525, —— C. C. A. ——; Scatena et al. v. Caffey and Edwards (Southern District of New York, August 20, 1919) 260 Fed. 756.

The court has jurisdiction to consider and determine the constitutional validity of the act in question. If valid the court must so declare, and being valid the law must be obeyed. If void for want of constitutional power, the courts to which that question is lawfully submitted must so declare; and, if such result be decreed, neither the government, the defendants herein nor any right-minded citizen will desire its enforcement, and the courts to which this question is lawfully submitted can neither decline nor escape decision of the question raised.

[3] Is the act of October 28th, in so far as by complainants challenged in this controversy, constitutional and valid? The act on its face is divided into two distinct parts: First, one having relation to the continued enforcement of what is known as the War-Time Prohibition Act of November 21, 1918, as changed, modified, and amended, until the conclusion of the treaty of peace between this country and the German allies, or at least until that time is reached at which the President by his proclamation shall declare the war at an end. The other part of the act deals with the enforcement of national prohibition after the prohibitory amendment to the Constitution shall by its terms become operative. With this second part of the act this controversy does not concern itself, but does involve alone the first part or provision of the act.

That the right of complainants to manufacture, barter, sell, dispose of, or use the beverages by them produced, whether in their nature intoxicating or nonintoxicating, within the territorial limits

of the state of Missouri, in time of peace, in the absence of the Eighteenth Amendment to the national Constitution, can be prohibited or regulated alone by the exercise of the sovereign police power of the state, none can well deny. As under the national Constitution, formed by the union and consent of the several states in existence when it was formed, and to which the subsequently admitted states have irrevocably bound themselves by the act of admission, all police power is expressly reserved to be exercised by the sovereign states in such manner and form as they may lawfully ordain and prescribe by law, it is too clear for argument no power or pretended power of Congress in the enactment of the act in question can or may be traced to any such source. If permissible, at this late date, to cite authorities in support of this position, the following may be noted: Kidd v. Pearson, 128 U. S. 1, 9 Sup. Ct. 6, 32 L. Ed. 346; Vance v. Vandercook, 170 U. S. 438, 18 Sup. Ct. 674, 42 L. Ed. 1100; Keller v. United States, 213 U. S. 128, 29 Sup. Ct. 470, 53 L. Ed. 737, 16 Ann. Cas. 1066; Hammer v. Dagenhart, 247 U. S. 251, 38 Sup. Ct. 529, 62 L. Ed. 1101, Ann. Cas. 1918E, 724.

Indeed, the state of Missouri, in the lawful exercise of its undoubted reserve police power, has ordained complainants in this case may do, and has legalized complainants in the doing of, the precise acts which Congress by its act in controversy condemns and makes criminal. As all legislative power conferred upon or which may be exercised by the Congress was first vested in the sovereign states, and was by the states through the medium of the national Constitution delegated to the national Congress, then, if, as in this instance, the Congress assumes in the enactment of any law to invade the realm of the sovereign police power of the states expressly reserved by the creators of the nation to the sovereign states, of necessity, it must and does follow, he who would contend for the constitutional validity of such enactment must point out some specific provision of the national Constitution which in express terms, or by necessary implication, justifies and authorizes the Congress in making such invasion, or the act so done must fail of constitutional power.

[4] In the instant case defendants justify the invasion of the reserve police power of the states by Congress in the passage of the act in question by pointing to the war powers of the government as found expressed in article 1, section 8, of the national Constitution. In opposition to this contention complainants reply: (1) That in fact the war between this country and the German allies had actually terminated before the date the act was passed over the veto of the executive; that the executive has so declared in his official capacity. Hence the power of the Congress to proceed under its war powers granted in the national Constitution had ceased to exist. (2) Because during the period of warfare between this country and the German allies the Eighteenth Amendment to the national Constitution was by the Congress proposed to and ratified by the states and had become a part and parcel of our national Constitution at the date of the passage of the act in question, by reason of which assent the right of the Congress to exercise control over the subject of intoxicating beverages concur-

rently with the states was in express terms deferred until one year after ratification of said amendment by the states. Hence said amendment by necessary implication excluded Congress from the passage of the act in question, so far as it relates to the provisions of the act here challenged.

These contentions of the respective parties to the suit bring the controlling question for decision before the court in this form: On the one hand, in support of the constitutional validity of the act, we have reference to the war powers of the government and such legislative authority thereunder as the Congress was warranted in exercising at the date of the act. In opposition to this, we have: (1) Prior to the date of the passage of the act all police power employed in times of peace to prohibit, regulate, or control the manufacture, sale, transportation, or use of intoxicating beverages under the national Constitution expressly reserved to be exercised by the several states. (2) The Eighteenth Amendment to the national Constitution, proposed by the Congress and ratified by the states during a period of actual warfare, places the exercise of the police power employed to prohibit, regulate, or control the manufacture, barter, sale, and use of intoxicating beverages under the concurrent control of the sovereign nation and the sovereign states, to be thereafter exercised, however, only on the part of the nation at the expiration of one year from the date said amendment was ratified by the states. In this condition of our organic law the Congress acted in the passage of the law in question. Does such condition of the organic law authorize the act done?

Complainants contend the states created this nation because they could not continue to endure as a single state or nation without a central power authorized to employ in certain matters and contingencies powers above and beyond that possessed by the state or any other power. That the states made for the nation they so created a written Constitution. This Constitution was made to contain the provisions and conditions on which it might thereafter be modified or amended. That under this provision, and in pursuance thereof, the Eighteenth Amendment to the national Constitution became a part of the organic law. That the national Constitution is a written instrument. Its true intent and construction must be gained by considering all within its four corners as a completed whole. As no provision may be excluded therefrom, so, provisions apparently conflicting, if any be found therein, must be reconciled and harmonized in construction. That the war powers therein granted to the nation were irrevocably delegated for the express purpose of empowering the nation, independent of all other source of power, to preserve and perpetuate its national existence in times of national peril arising from or out of war. That the war powers of the nation as employed in the Constitution are emergency powers. When the emergency arises, the peril comes, then sui sponte the war powers of the nation spring into use to be exercised by the Congress. When such emergency ceases to exist, and the peril to the nation ends, the war power of the nation relapse into disuse. Whether the exigency calling for the exercise of the power has arisen is a question of fact for the determination of the

courts, and is not concluded by the fact the Congress has exercised the power. Ex parte Milligan, 4 Wall. 2, 18 L. Ed. 281; Mitchell v. Hamony, 13 How. 115, 14 L. Ed. 75; Perrin v. United States, 232 U. S. 478, 34 Sup. Ct. 378, 58 L. Ed. 691; Willoughby, Constitutional Law, vol. 2, p. 1251; Milligan v. Hovey, 3 Biss. 13, Fed. Cas. No. 9,605; In re Egan, 5 Blatchf. 319, Fed. Cas. No. 4,303; Johnson v. Jones, 44 Ill. 142, 92 Am. Dec. 159; Griffin v. Wilcox, 21 Ind. 370; Nance & Mays v. Brown, 71 W. Va. 519, 77 S. E. 243, 45 L. R. A. (N. S.) 996, Ann. Cas. 1914C, 1; United States v. Hicks (D. C.) 256 Fed. 707; Montoya v. United States, 180 U. S. 261, 21 Sup. Ct. 358, 45 L. Ed. 521; Jacob Hoffman Brewing Co. v. McElligott, 259 Fed. 321, —— C. C. A. ——.

If this argument made by complainants in the end prevails it is entirely clear there was not, as shown by the proofs in this case, and as determined by those governmental and historical acts of which the court will take judicial notice, any such emergency existing on October 28, 1919, as to authorize the Congress in resorting to the war powers of the nation as embodied in the Constitution to invade the reserve police powers of the state in the passage of the act in question so far as challenged in this suit, and, further, that the prohibition found in the act against the manufacture, barter, sale or use of beverages by complainants containing not to exceed 2¾ per cent. of alcohol bears no just or substantial relation to either the conduct of any war then in fact prevailing between this country and any other nation of this earth, or on the process of disbanding any troops theretofore engaged in the prosecution of any such war. However this question of grave doubt may ultimately be determined, there is another aspect of this case, which, in my mind, gives rise to serious concern. The national Constitution considered as a whole, inclusive of the recent Eighteenth Amendment thereto, takes away from the several states the theretofore exclusive exercise of the police power in dealing with the subject of the manufacture, sale, transportation, and use of intoxicating beverages, and places the right to exercise such power under the concurrent control of the nation and the several states, only, however, after the expiration of a period of one year from the date said amendment was ratified by the states. This one-year period had not as yet expired at the date the act in question was passed by the Congress. The act in question, so far as it relates to a time prior to the expiration of said one-year period does not pretend to concur with the legislation of the state of Missouri on the subject-matter thereof, but, on the contrary, as has been seen and stated, is in direct conflict with the lawful legislation of the state now in force, enacted under its reserve police power.

This amendment was made to the Constitution at a time when the war in fact was raging in Europe. Theretofore the Congress had, in the exercise of the war powers of the government, passed the acts of August 10, 1917, and of November 21, 1918, which said acts were in full force at the date the Eighteenth Amendment was by the Congress proposed to the states. This proposal, as made and accepted by the states, provides such powers of legislation as are therein conferred

on the Congress shall be withheld for the period of one year from the date of ratification by the states. Yet the Congress, in the passage of the act in question, in so far as here challenged, attempts by a re-exercise of the war powers of the government within the one-year restricted period to accomplish that purpose which the Eighteenth Amendment at the time expressly withheld from national control. In other words, the act challenged comes to this: By a re-exercise of an implied power under one provision of the national Constitution, the Congress attempts the doing of those acts withheld from its jurisdiction or control by the express provisions of another provision of the Constitution. True, if it is possible to conceive, think, or believe such exercise of the war powers of the nation arose out of any emergency of the government at war, or bears any just or substantial relation to any exigency of the nation in the conduct or conclusion of war, all right-minded men will most cheerfully and willingly yield obedience thereto without question, "for the safety of the nation is the supreme law." But if, as expressed by the Chief Executive in his message vetoing the act, the war was then at an end, demobilization of our forces completed, and no emergency of government calling for its enactment, containing powers by the national Constitution still reserved to be exercised by the states under their police powers, then the necessity of the Congress to resort to the war powers having ceased, the power to so do had ceased, and may not be pointed to in support of the act, and the courts of the country, when their jurisdiction is lawfully invoked, should and must so declare.

Beyond all cavil the purpose sought to be subserved in postponing the exercise of the power conferred on Congress by the Eighteenth Amendment for the period of one year therein found was to protect the property and property rights of citizens similarly situated with complainants, located in states whose then laws permitted the manufacture, sale, and use of beverages such as are produced by complainants from spoliation or confiscation under legislative enactment by the Congress, such as is contained in that portion of the act of October 28, 1919, herein sought to be enjoined, to the end that during said period of one year the owners might change, convert, and devote said properties to other lawful and beneficial uses consistent with the exercise of the power so conferred upon the Congress at the end of the period. From the very fact the amendment so provides, it must be thought those states, such as the state of Missouri, in which such properties were lawfully owned, employed, and enjoyed at the date the amendment was ratified, would not, through their legislative bodies, have ratified the same, in the absence of the one-year provision found in the amendment; or, had it been thought by the legislative bodies of such states, during said one-year period, and on October 28, 1919, the Congress would have enacted the drastic provisions found in that part of the act here challenged, unless impelled thereto by positive, pressing exigencies of war itself.

Without declaring or attempting to declare the act to be either constitutional or unconstitutional, but having in view the grave doubts

expressed as to its constitutional validity, so far as challenged in this suit; in view of the fact the injunctive relief sought in this case is the very life of the bill itself; in view of the fact the present enforcement of the drastic provisions therein found will work irreparable loss and damage to complainants; in view of the conclusive showing, made in this case, the beverages being manufactured by complainants are in no just or true sense intoxicating or baneful in their effects; and in view of the further fact no injury or damage can come to the defendants by the making of an interlocutory order preserving the status of the parties pendente lite, it follows—the motions to dismiss for want of jurisdiction and equity must be denied, and are denied. The application for an injunction pendente lite, and until a determination of the constitutional validity of the act so far as herein challenged is decreed on full hearing, is granted, on such terms as to bonds and forms of order as may be agreed upon by the parties or hereafter determined by the court.

It is so ordered.