SPANG v. ROPER, Secretary of Commerce, et al.

No. 9251.

District Court, E. D. Pennsylvania.

Feb. 14, 1936.

H. Eugene Gardner, of Glenside, Pa., for plaintiff.

Thomas J. Curtin, Asst. Dist. Atty., and Charles D. McAvoy, U. S. Atty., both of Philadelphia, Pa., and Charles Wyzanski, Jr., Sp. Asst. to the Atty. Gen., for defendants.

WELSH, Justice.

This matter is before the court on a motion for preliminary injunction to restrain officials of the Department of Commerce and the enforcement officers in this district from employing and compensating the personnel of the business census project authorized by the Emergency Relief Act, in disregard of the preference given to discharged veterans under federal statute. Argument was had on this motion and also on defendants' motion to dismiss the bill.

The suit is brought by the plaintiff on behalf of himself and other honorably discharged service men against the Secretary of Commerce, the Chief Personnel Officer, the officials of the Department of Commerce in charge of the business census project in Philadelphia, the Attorney General, and the United States Attorney for this district. The suit was discontinued as to the Secretary of Commerce, the Chief Personnel Officer, and the Attorney General; no service having been made upon them.

The bill avers that, by authority of the Emergency Relief Appropriation Act of 1935 (15 U.S.C.A. § 728 note) and an executive order made in pursuance thereof, there was established at Philadelphia an office for the furtherance of the emergency relief business census project, which office is in the charge of the defendants. The plaintiff is an honorably discharged veteran of the World War, having proper qualifications and the ability to perform work in connection with the taking of the census. He has made application for employment on that project, but the defendants have refused to accept his application and to employ him because he was not receiving federal relief in May, 1935, and was not entitled to such employment under the alleged terms of an executive order which controlled the actions of the defendants. It is averred that honorably discharged veterans and their dependents, when competent, are entitled under federal statute to preference of employment in government service, and that the refusal of defendants to employ the plaintiff is a violation of the duty imposed upon the defendants and a denial of the plaintiff's rights under the law. Plaintiff prays that defendants be enjoined from employing and compensating any personnel for the project in question in disregard of the statutes of the United States, the civil service rules, and the opinions of the Attorney General.

■ For the purpose of the motion for preliminary injunction, we must accept the averments of the bill as true. We find confirmation of the essential facts in the defendants' affidavits contra the motion, which declare that, under authority of the emergency relief acts and an executive order, a person to be eligible for employment on a work relief project must be (1) registered with the United States Employment Service and (2) receiving public relief in May, 1935. The affidavits further state that the plaintiff, although registered with the employment office, was not receiving public relief in May, 1935, had not been certified to the Census Bureau in accordance with the regulations, and was not eligible for employment.

Before determining the exact question raised, it is necessary to examine the Emergency Relief Appropriation Act of 1935 (15 U.S.C.A. § 728 note) and the executive order under which the project is being carried on:

Section 1: "In order to provide relief, work relief and to increase employment * * * there is hereby appropriated * * * to be used in the discretion * * * of the President * * * the sum of $4,000,000,000. * * * Provided, that * * * this appropriation shall be available for the following classes of projects: (a) Highways; (b) rural rehabilitation; (c) rural electrification; (d) housing; (e) education; (f) C.C.C. camps; (g) state projects; and (h) miscellaneous projects, $350,000,000."

"Provided, however, That the expenditure of funds * * * for the construction of public highways and other related projects shall be subject to such rules and regulations as the President may prescribe * * * and preference in the employment of labor shall be given * * * to persons receiving relief, where they are qualified."

The executive order in question states that:

"(c) Preference in the employment of workers shall be given to persons from

the public relief rolls, and except with the specific authorization of the Works Progress Administration at least ninety percent of all persons working on a work project shall have been taken from the public relief rolls. * * *

"(e) Except as specifically provided in this part, workers who are qualified by training and experience to be assigned to work projects shall not be discriminated against on any grounds whatsoever."

This action is brought upon the theory that the above regulations are in violation of the act of 1919 and supplements (5 U.S.C.A. § 35), which provides: "Persons honorably discharged from the military or naval service by reason of disability" suffered "in the line of duty, shall be preferred for appointments to civil offices" if qualified to perform the duties required; and "in making appointments to clerical and other positions in the executive branch of the Government * * * preference shall be given to honorably discharged soldiers, sailors, and marines, and widows of such and to the wives of injured soldiers, sailors and marines who themselves are not qualified, but whose wives are qualified to hold such positions."

The general question raised is whether the executive, in exercising the powers granted under the Emergency Relief Appropriation Act, is governed by the act as to soldiers' preferences in employing persons for work relief.

It is noted that the Emergency Relief Appropriation Act places certain specific limitations upon the discretion and powers of the President. He is limited to the classifications and amounts specified and may only authorize a variance up to twenty per cent.; the funds for public highway projects must be apportioned by the Secretary of Agriculture; for river and harbors projects by the permanent government department having charge thereof; on public buildings the Act of March 3, 1931, 46 Stat. 1494, as amended, 40 U.S.C.A. § 276a and note, shall apply as to wages; and, in carrying on road projects, persons on relief are given preference of employment. But in all other matters it would seem that the executive is given complete discretion.

■ Plaintiff, however, contends that the act gives the executive the power and discretion to use the funds appropriated in his discretion only where there are no limitations prescribed by the act or by general laws limiting or defining the power of the executive as a general policy of the government.

The position of the defendants is that the act in question has given the executive full and absolute power to carry out its purpose as he shall deem best, and to determine the class of persons to be benefited by the relief contemplated, being limited only by the terms of the Emergency Relief Appropriation Act itself.

We are therefore required to determine the extent of the executive authority to employ under the act and the limitations thereon, if any. Although broad powers are given, it could not be contended that the executive might engage in some enterprise contrary to law or public policy, although no such limitation is specified in the act. He could not perform the duties imposed in a manner or by means not permitted by the laws which control and define the powers and duties of the executive; and we conclude that the executive is in fact governed in his actions and limited in his authority by existing laws. Regardless of the generality of the language of the act, it was not the intention of Congress to give authority to carry out its mandate without regard or in a manner contrary to other laws; rather it was the intention to give the executive a wide discretion in matters not already governed by existing legislation. That discretion extended to the choice of particular projects, the amounts to be allotted to each, the time they were to be undertaken, the number of projects and employees and the rates of compensation, except as these matters were specifically limited in the act. To further extend the discretion and hold that the executive is not bound by the limitations of established laws would logically lead to an absurdity. By such absurd argument, we may say that, since the act is intended to relieve unemployment and nothing is said about where the relief is to be given, funds might be applied under the miscellaneous project clause, to the establishment of a bank or other commercial enterprise in which a few people might be employed, but which is subject to other regulatory acts.

If the position of the defendants were maintained, it would be equivalent to holding that each act of Congress must be deemed to be complete in itself; that power and authority not specifically limited may be exercised and governed only by the discretion of the particular executive involved,

and not affected by the policies of the government as expressed in congressional acts generally. This might conceivably lead to assumption of authority far greater than that contemplated and the development of an autocracy beyond the control of the legislative and judicial branches of the government. It would be exceedingly dangerous to hold that the powers and discretion given to the executive are not governed by laws declaring the policies legislatively established. As to the particular acts in question, we think it necessary and proper to interpret them together and in relation to each other.

The policy of giving veterans of the military and naval service a preference in the matter of public employment and other bounties has long been established, and is evidenced by the pension, hospitalization, compensation, and preference of employment acts; the latter being amended as recently as 1929. That policy still exists, and we must consider that the Veterans' Preference Act is now in force and applies to all employment within its purview.

■ Under the Emergency Relief Appropriation Act, the executive is authorized to employ many thousands of persons for purposes properly within the jurisdiction given to the executive department by that act. It specifically and in furtherance of the purpose expressed in the preamble declared that as to the largest single class of projects (road building $800,000,000) persons on public relief should be given preference of employment; but that preference was not extended to other projects, and, by inference, we may presume that it was not intended. It follows then that the executive was not bound to prefer persons on relief for employment on any of the other projects; and he could exercise his own discretion as to all other employees, except as his authority might be controlled by existing laws. Since the Emergency Relief Appropriation Act does not deny the preference given to veterans, we may assume that the allowance of such preference was intended to apply in so far as it does not conflict with the particular limitations in the act.

■ The executive order requiring employment of persons on relief for *all* projects would seem to exceed the executive authority given by the act which limits such preference to road building projects only. It also prohibits discrimination in favor of veterans, and thereby denies the applicability of the Veterans' Preference Act. To that extent we may say that the executive order is invalid, and the administrative officers and employees charged with its execution and enforcement may not be directed to carry it out.

The defendants herein, who are the officers and employees of the executive department, carrying on the census project, may be restrained from carrying on the projects or enforcing that part of the executive order shown here to be invalid. They may be restrained from denying to the plaintiff the preference he is entitled to under the law and from employing nonservice persons in preference to honorably discharged veterans, their widows and wives, as described in the preference act.

■ The defendants have challenged the jurisdiction of the court as well as the form of the action and the sufficiency of the complaint. As to the latter, it would seem obvious that the plaintiff has been injured by the denial of rights granted him under the law. A prima facie case is established by the bill and the answering affidavits which show that he is entitled to relief, and that such relief must be equitable. The fact that he has brought the suit on behalf of himself and others within a class does not adversely affect his individual rights, since he has established his injury or the threat of injury.

■ The courts are without jurisdiction to interfere with or control an executive officer in the exercise of any power or the performance of any duty of an executive or administrative character (Interstate Commerce Commission v. Chicago & Alton R. Co., 215 U.S. 479, 30 S.Ct. 163, 54 L.Ed. 291; Interstate Commerce Commission v. Illinois Central R. Co., 215 U.S. 452, 30 S. Ct. 155, 54 L.Ed. 280), although mandamus may be proper to compel the performance of a purely ministerial act. It has been very properly held that judicial discretion must not be substituted for executive discretion, and courts will refuse to substitute their judgment for that of an official. Louisiana v. McAdoo, 234 U.S. 627, 34 S.Ct. 938, 58 L.Ed. 1506. But the rule has been established that, where public officers are acting in breach of trust or unlawfully or without authority, they may be enjoined. Waite v. Macy, 246 U.S. 606, 38 S.Ct. 395, 62 L.Ed. 892; 32 C.J. 240. In that case, the Board of Tax Appeals was restrained from enforcing an unlawful order, and in American Magnetic Healing School v. McAnnulty, 187 U.S. 94, 23 S.Ct.

33, 47 L.Ed. 90, a postmaster was restrained from carrying out an invalid order of the Postmaster General. See, also, Union Distilling Co. v. Bettman (C.C.) 181 F. 419, wherein enforcement of an unlawful order of the Internal Revenue Bureau was restrained, and Griesedieck Bros. Brewing Co. v. Moore (D.C.) 262 F. 582.

An executive officer who exceeds his authority may be restrained in equity. In such cases, the complainant does not seek to interfere with an officer of the government acting within his official discretion, but challenges his authority to do the things complained of, and the suit is not against the United States (Philadelphia Co. v. Stimson, 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570; Lane v. Watts, 234 U.S. 525, 34 S.Ct. 965, 58 L.Ed. 1440; Waite v. Macy, supra) ; and there can be no doubt that it is within the province of the judiciary to determine whether or not acts of executive officers are authorized by law. Magruder v. Belle Fourche Valley Water Ass'n, 219 F. 72, 133 C.C.A. 524. See, also, Kuenster v. Meredith (D.C.) 264 F. 243, where the threatened revocation of a license by the Secretary of Agriculture was enjoined. In determining whether an order should be set aside or suspended, the power to make, and not the wisdom, is the test. See Interstate Commerce Commission v. Illinois Central R. Co., supra.

It was also argued that the bill must be dismissed because those who promulgated or are primarily chargeable with the enforcement of the order are not parties to the suit. The facts thus far developed indicate that applications are accepted, and payments of compensation are made by the officers and employees within this jurisdiction, which acts are performed in pursuance of the unlawful executive order. And, while it is true that the Secretary of Commerce is not actually a party to the present suit, we think it entirely proper to restrain his representatives from performing unlawful acts within this jurisdiction.

A distinction is made between appointments to clerical and other positions in the executive branch of the government referred to in the Veterans' Preference Act and the temporary employment on work relief projects. This appears to be a distinction without any substantial difference. The employment is by and through the executive department and may be called a job, position, or office, regardless of its duration. The order prescribes monthly earnings, regular hours of work, and the conditions of employment. We think the veterans' preference laws were intended to cover all classes of employment in the executive department, and that work relief must be included.

The preferential status given to veterans is not to be considered in the nature of a gratuity. This status was conferred by an appreciative government upon men (and women) who had rallied to their country's service in wars in behalf of American ideals and aspirations. The experience of 10 years of the judge of this court in the Congress leads him to believe that this policy is as fixed as is reverence for the Constitution and the inherent rights of humanity. He believes that, if an attempt were to have been made in the Congress in the passage of the Emergency Relief Appropriation Act of 1935 to have set aside the preferential status given to veterans, it would not have mustered sufficient support worthy of mention. And, further, it is most significant that in the executive order itself the executive does not say that the preferential status of veterans be waived. It has taken bureaucracy, which can assume dangerous proportions, to read into the executive order such an unfair interpretation. A bureaucracy more responsive to the expressed will of the Congress and more in sympathy with the veterans of our wars would have taken a broader and more charitable view of the executive order and would have assumed that, when the President said that preference was to be given to those on relief rolls, the President meant that there should be read into that order a due regard for the rights and privileges conferred upon the veterans. But the executive order is now before us as interpreted by bureau chiefs, and it is this interpretation of the order that does not meet the proper tests required by a court of justice.

The preliminary injunction sought may be granted and the defendants' motion to dismiss the bill of complaint is denied.