WAITE ET AL., AS GENERAL APPRAISERS, DESIGNATED BY THE SECRETARY OF THE TREASURY AS THE BOARD OF TEA APPEALS, *v.* MACY ET AL., DOING BUSINESS AS COPARTNERS UNDER THE NAME OF CARTER, MACY & COMPANY.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 255. Argued March 28, 1918.—Decided April 22, 1918.

A transgression of its statutory power by an administrative board is subject to judicial restraint, although guised as a discretionary decision within its jurisdiction.

In testing the right of injunction against administrative officers, the presumption that they will follow the law, though set up in their answer, cannot be indulged where an intention to obey an illegal regulation of their superior is not directly disclaimed by them and is admitted by their counsel.

The only grounds recognized by the Act of March 2, 1897, c. 358, 29 Stat. 604, as amended, c. 170, 35 Stat. 163, for excluding tea from import, are inferiority to the standard in purity, quality and fitness for consumption; and, where the tea offered is otherwise superior to the standard in value and purity, the fact that it contains a minute and innocuous quantity of coloring matter not found in the sample will not justify shutting it out, notwithstanding a regulation of the Secretary of the Treasury, purporting to be based on the statute, declares the presence of any coloring matter an absolute ground for exclusion.

In the absence of other adequate remedy for the importer, the Tea
Board constituted under the Act of 1897, *supra*, may be enjoined
from excluding tea upon a test prescribed by the Secretary of the
Treasury but not sanctioned by the statute.
224 Fed. Rep. 359, affirmed.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Warren* for appellants.

*Mr. Joseph H. Choate, Jr.,* for appellees.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill brought by importers of tea to prevent the
appellants, a board of general appraisers known as the
Tea Board, from applying to tea imported by the plain-
tiffs tests which, it is alleged, are illegal and if applied
will lead to the exclusion of the tea. The bill was dis-
missed by the District Court, 215 Fed. Rep. 456, but the
decree was reversed and an injunction ordered by the
Circuit Court of Appeals, 224 Fed. Rep. 359. 140 C. C.
A. 45.

The case is within a narrow compass. The Act of
March 2, 1897, c. 358, 29 Stat. 604, amended by the Act
of May 16, 1908, c. 170, 35 Stat. 163, provides for the
establishment of standards "of purity, quality, and fitness
for consumption, of all kinds of tea imported;" &c., § 3, and
makes it "unlawful . . . to import any merchandise
as tea which is inferior in purity, quality, and fitness
for consumption to the standards" referred to. § 1. When
the tea is entered at the custom house it is compared with
the standards by an examiner and if found equal to them
in the above particulars it may be released by the custom
house; if found inferior it is to be retained. § 5. But
either side may protest and have the matter referred to
a board of three general appraisers such as the appel-
lants are. If upon a final reëxamination by the board "the

tea shall be found inferior in purity, quality, and fitness for consumption to the said standards" the tea must be removed from the country within six months. § 6. The tea is to be tested in the particulars mentioned "according to the usages and customs of the tea trade, including the testing of an infusion of the same in boiling water, and, if necessary, chemical analysis." § 7. The Secretary of the Treasury is given power to enforce the provisions of the act by appropriate regulations. § 10. A regulation has adopted a test for the discovery of artificial coloring matter which in brief consists in rubbing tea leaves reduced to dust upon semi-glazed paper with a spatula and examining the smear with a lens. If particles of coloring matter are found a test sheet is submitted to chemical analysis for identification of the coloring matter and as soon as it is identified the tea is to be rejected. It was said below to be undisputed that if the tea in question contains any coloring matter, whether present through design or accident, the appellants pursuing the regulation will keep it out. The standard samples of this tea contain no coloring matter but contain a far greater amount of other foreign substances than does this. This tea is worth nearly four times as much a pound as the standard and the sole cause for rejecting it is the presence of from nine to nineteen parts of Prussian blue in a million of elements otherwise not objected to. It is not contended that the Prussian blue is deleterious. These facts are found by both Courts below. Upon them the plaintiffs (the appellees) say that the Government is attempting to apply criteria not allowed by the law. The Government says that the bill is an attempt to control a board in the performance of its statutory duty and to substitute the judgment of a court for that of the board.

No doubt it is true that this Court cannot displace the judgment of the board in any matter within its jurisdiction, but it is equally true that the board cannot en-

large the powers given to it by statute and cover a usurpation by calling it a decision on purity, quality or fitness for consumption. *Morrill* v. *Jones,* 106 U. S. 466. *United States* v. *United Verde Copper Co.,* 196 U. S. 207, 215. *United States* v. *George,* 228 U. S. 14, 21. Again, it is true that Courts will not issue injunctions against administrative officers on the mere apprehension that they will not do their duty or will not follow the law. *First National Bank of Albuquerque* v. *Albright,* 208 U. S. 548. But in this case the superior of the appellants had promulgated a rule for them to follow which is alleged to be beyond the power of the Secretary to make. It is said that the appellants are independent of the Secretary and that it is to be presumed that they will decide according to law, as they say in their answer. But if the avoidance of a direct statement as to their intent did not of itself warrant a presumption that they would obey orders, the admissions of their counsel were enough to make their intent to do so plain.

We are brought then to the merits, and we are of opinion that the rule cannot be sustained, notwithstanding that since a former board refused to follow it as it then stood, there has been added clauses intended to save it as a chemical analysis. The regulation makes the presence of any coloring matter an absolute ground for exclusion. But the only grounds recognized by the statute are inferiority to the standard in purity, quality and fitness for consumption, words repeated over and over again in the act. It cannot be made a rule of law that any tea that has an infinitesimal amount of innocuous coloring matter is inferior in those respects to a standard that has a much greater amount of other impurities and is worth only a quarter as much. All extraneous substances are impurities, and the presence of any may be detected in any way found efficient. But one such substance cannot be picked out and accorded supremacy in evil by an absolute

rule irrespective of any harm that it may do. We go one step further and add that in view of the facts as to the standard and this tea, the presence of the Prussian blue affords no adequate ground for keeping the tea out.

The Secretary and the board must keep within the statute, *Merritt* v. *Welsh*, 104 U. S. 694, which goes to their jurisdiction, see *Interstate Commerce Commission* v. *Northern Pacific Ry. Co.*, 216 U. S. 538, 544, and we see no reason why the restriction should not be enforced by injunction, as it was, for instance, in *Bacon* v. *Rutland R. R. Co.*, 232 U. S. 134. *Philadelphia Co.* v. *Stimson*, 223 U. S. 605, 620. *Sante Fe Pacific R. R. Co.* v. *Lane*, 244 U. S. 492. We are satisfied that no other remedy, if there is any other, will secure the plaintiffs' rights.

*Decree affirmed.*