**Leonard S. GOODMAN, Appellant,**

v.

**PUBLIC SERVICE COMMISSION of the District of Columbia et al., Appellees.**

**No. 24944.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 29, 1972.

Decided April 18, 1972.

Rehearing Denied May 12, 1972.

Mr. Leonard S. Goodman, pro se.

Mr. Cornelius Means, Washington, D. C., with whom Mr. Stephen A. Trimble,

---

Washington, D. C., was on the brief, for appellee Potomac Electric Power Co.

Mr. C. Belden White, II, Asst. Corp. Counsel for the District of Columbia, with whom Messrs. C. Francis Murphy, Corp. Counsel, and George F. Donnella, Asst. Corp. Counsel, were on the brief, for appellee Public Service Commission of the District of Columbia.

Before FAHY, Senior Circuit Judge, and TAMM and MacKINNON, Circuit Judges.

FAHY, Senior Circuit Judge:

In proceedings before the Public Service Commission of the District of Columbia, appellee Potomac Electric Power Company, PEPCO, which serves the community with electricity, obtained an increase in its rates. The proceedings eventuated in three orders of the Commission as follows:

(1) Order No. 5419 (sometimes referred to as the Interim order) of January 30, 1970, which authorized an interim surcharge increasing existing rates by 5%, to be effective February 2, 1970.

(2) Order No. 5429 (sometimes referred to as the Phase I order) of April 15, 1970. By this order and its accompanying decision and findings the Commission established the fair rate of return of 7.1% for purposes of calculating the necessary increase, and found that this rate would require an increase in its annual gross operating revenues of $22,103,781, of which 46.24% or $10,220,788 should be derived from customers within the District of Columbia. The Company was directed to present rate schedules applicable to the District of Columbia which when applied to consumer usage for the test year would yield the additional revenues. The total revenue increases in rates for the District of Columbia customers was 12.5%. Order 5429 also required the Company to submit proposed schedules "designed to increase its gross operating revenues within the District of Columbia on an annual basis by $10,220,788," from the level of the test year.

(3) Order No. 5436 (sometimes referred to as the Phase II order) of June 29, 1970, was an order effectuating the above directive by its approval of a schedule of rates so designed.

Mr. Goodman petitioned the Commission pursuant to 43 D.C.Code § 704 for reconsideration of the Phase I order.[1] Upon denial, he timely filed his appeal pursuant to 43 D.C.Code § 705[2] which provides that any person affected by a final order or decision of the Commission may within sixty days after final Commission action upon the petition for reconsideration, file with the clerk of the District Court a petition of appeal.

On motions of PEPCO and the Commission, the District Court dismissed Mr. Goodman's complaint, holding it to be too late to be considered as an appeal

1. Section 43–704 provides in pertinent part:

Any public utility or any other person or corporation affected by any final order or decision of the commission may, within thirty days after the publication thereof, file with the commission an application in writing requesting a reconsideration of the matters involved, and stating specifically the errors claimed as grounds for such reconsideration.

43 D.C.Code § 704 (1967).

2. Section 43–705 provides in pertinent part:

The United States District Court for the District of Columbia shall have jurisdiction to hear and determine any appeal from an order or decision of the Commission. Any public utility or any other person or corporation affected by any final order or decision of the Commission, other than an order fixing or determining the value of the property of a public utility in a proceeding solely for that purpose, may, within sixty days after final action by the Commission upon the petition for reconsideration, file with the clerk of the United States District Court for the District of Columbia a petition of appeal setting forth the reasons for such appeal and the relief sought; at the same time such appellant shall file with the Commission notice in writing of the appeal together with a copy of the petition.

43 D.C.Code § 705 (1967).

from Order No. 5419—the interim increase order—and that Order No. 5429, the Phase I order, to which the appeal was directed, was "neither a final order or decision nor an order or decision which affected the plaintiff." The court also held that Mr. Goodman was not affected until the entry of the Phase II order from which he had not appealed. From the dismissal order of the District Court Mr. Goodman appeals to this court.

We conclude that Order No. 5429—Phase I—was a final order which affected Mr. Goodman. For this reason we reverse the order of the District Court and remand the case for consideration of the validity of Order No. 5429 and for such other proceedings as are not inconsistent with this opinion.

## THE QUESTION OF FINALITY

■ The Phase I order is a final decision in the proceedings before the Commission. It authorizes an over-all increase in PEPCO's gross operating revenues, and provides that a portion of the increase is to be borne by District of Columbia customers. Its final character is in no sense affected by the need for the later Phase II order allocating the increase among the several different categories of customers. The increase in rates, and the findings of the Commission upon the basis of which the increase was allowed, were in no way left for further decision by the Phase II order. The Commission itself so viewed the matter while the proceedings were still before it. When PEPCO objected to the Commission's reconsideration of the Phase I order on Mr. Goodman's petition, on the ground that it was interlocutory, the Commission disagreed. The Commission accepted the petition for reconsideration for filing and denied the petition on its merits, stating, in response to PEPCO's arguments, that the petition would only

be refiled and we would have to consider it on its merits. Having now looked at those merits, we have concluded that the petition should be denied on the grounds outlined above. We see no reason why we should not so indicate at this time rather than determining whether we should wait to make our views known. The result in any event would be the same.

■ The fact that the Phase I order was not the final order in point of time in the proceedings, since it was followed by the Phase II order of rate schedules, is by no means conclusive of the legal situation. For purposes of judicial review the finality of an agency order depends upon the nature of the order rather than its chronology in relation to the whole of the agency proceedings. Federal Power Comm'n v. Metropolitan Edison Co., 304 U.S. 375, 384, 58 S.Ct. 963, 82 L.Ed. 1408 (1938). *See also* Isbrandtsen Co. v. United States, 93 U.S. App.D.C. 293, 211 F.2d 51 (1954), cert. denied sub nom. Federal Maritime Board v. United States, 347 U.S. 990, 74 S.Ct. 852, 98 L.Ed. 1124 (1954). As held in Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 71, 91 S.Ct. 203, 209, 27 L.Ed.2d 203 (1970):

[T]he relevant considerations in determining finality are whether the process of administrative decision-making has reached a stage where judicial review will not disrupt the orderly process of adjudication and whether rights or obligations have been determined or legal consequences will flow from the agency action. ICC v. Atlantic Coast Line R. Co., 383 U.S. 576, 602 [, 86 S.Ct. 1000, 16 L. Ed.2d 109] (1966); Rochester Telephone Corp. v. United States, 307 U.S. 125, 143[, 59 S.Ct. 754, 83 L.Ed. 1147] (1939).

Here there was no possible disruption of the administrative process; there was nothing else for the Commission to do. And certainly the Commission's action was expected to and did have legal consequences.

While it is true that in our case there was something else for the Commission

to do, the validity of the over-all increase was not conditioned upon anything yet to be resolved by the later order authorizing tariff schedules. What remained to be done was not concerned with the validity of the increase in rates which had been granted—the action of the Commission which Mr. Goodman took to court. That action "was expected to and did have legal consequences" which were not modified nor intended to be modified by the Phase II order which followed.[3] *See also* Frozen Food Express v. United States, 351 U.S. 40, 76 S.Ct. 569, 100 L.Ed. 910 (1956); *cf.* Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

## THE QUESTION WHETHER MR. GOODMAN WAS AFFECTED BY THE PHASE I ORDER

■ The right of appeal to the District Court from a final order or decision of the Commission pertains under Section 43–705 only to one "affected" by the order or decision. Mr. Goodman, it is not disputed, was at all relevant times a residential and commercial customer of PEPCO in the District of Columbia. It is said, however, that since the Phase I order did not allocate the increase in rates among the several categories of PEPCO customers, it did not directly alter Mr. Goodman's obligation to PEPCO. It is argued, as a theoretical matter, that upon the entry of the Phase I order, no customer knew with certainty that his category would have to bear any of the authorized increase. Rather, the argument continues, only until the entry of the Commission order approving the tariff schedule did PEPCO customers learn whether they were affected. We believe it sufficient to note that public hearings were held May 25 and 26, 1970, on the proposed PEPCO rate schedules, Mr. Goodman's complaint was filed in the District Court on June 15, 1970, and fourteen days later, on June 29, 1970,

the Commission entered its Phase II order approving the proposed schedules which increased Mr. Goodman's rates, prior to the dismissal of his complaint by the District Court. This aside, we think he had standing initially as a customer who was subject to inclusion in the increase. In this connection we note an earlier comment by this court upon the word "affected" in Sections 704 and 705 as follows:

> The word "affected," as used in the present statute, seems to have been chosen by Congress, deliberately, to expand the privilege of complaint and appeal beyond that contemplated by words which it has used in other statutes, and beyond the conventional tests used in equity suits seeking restraint of governmental action
> . . . .

United States v. Public Utilities Commission of the District of Columbia, 80 U.S.App.D.C. 227, 231–232, 151 F.2d 609, 613–614 (1945). *Cf.* Constructores Civiles de Centroamerica v. Hannah, 148 U.S.App.D.C. 159, 459 F.2d 1183 (1972). Had the Phase II order eliminated any effect upon Mr. Goodman's rates, we might have a different case. The proceedings before the Commission, however, were on an application for a general increase in rates. They were not limited to an increase either sought or granted with respect only to a category of customers which would exclude Mr. Goodman. He was not required to await the Phase II order, which might not be entered until his time to appeal from the Phase I order had expired.

One may sympathize with PEPCO in its complaint that of all those who might have appealed only Mr. Goodman did so, and that even he, seemingly with some stubbornness, appealed only from the Phase I order rather than the last Phase II order. As to the latter PEPCO now states no objection could have been made on the ground of lack of finality. As to the first of these complaints the answer

3. To the extent Leeman v. Public Utilities Comm'n, 104 F.Supp. 553 (D.D.C.1952), may be read to the contrary we respectfully disagree.

is not in the fact that Mr. Goodman alone appealed, but in whether the Phase I order was appealable by him. As to PEPCO's position that had he chosen to appeal the Phase II order he would have chosen a final order, perhaps Mr. Goodman had no particular objection to whatever schedules might be approved to carry out the rate increase, assuming the validity of the increase, but only to the increase.

## THE SCOPE OF THE APPEAL IN THE DISTRICT COURT

■ Mr. Goodman includes in his appeal to the District Court a challenge to PEPCO's right to retain the proceeds of the interim surcharge. He maintains that PEPCO is not entitled to an increase of the magnitude authorized by the Interim order, much less that authorized by the Phase I order, and, therefore, that PEPCO is not entitled to retain any of the interim proceeds in excess of a rightful increase. We agree that the total increase, which of course includes the interim surcharge, is reviewable on his appeal to the District Court, not as if the appeal were from the Interim order itself, but because the increase authorized by that order is included in the increase carried into the Phase I order. Accordingly, if the appeal were to result in a decision that the 5% interim surcharge was excessive, PEPCO would be required to refund the excess.

Whether, or to what extent, the review by the District Court of the validity of the increase authorized by the Phase I order might affect the Phase II order must abide the result of the appeal from the Phase I order and such further proceedings, if any, before the Commission as might be called for by the District Court's decision on the appeal of the Phase I order.

Reversed and remanded for further proceedings consistent with this opinion.

MacKINNON, Circuit Judge, concurring in result:

While I concur with the majority opinion's finding. that dismissal was improper in this case, I would arrive at that result on grounds that would not reach the question of the finality of the Phase I order. The only case cited to us squarely on that question, the late Judge Holtzoff's opinion in Leeman v. Public Utilities Commission, 104 F.Supp. 553, 556 (D.D.C.1952), rev'd on other grounds sub nom. Capital Transit Co. v. Public Utilities Commission, 93 U.S. App.D.C. 194, 213 F.2d 176, cert. denied, 348 U.S. 816, 75 S.Ct. 25, 99 L.Ed. 643 (1954), held that

> the first order of the Commission was in effect an interlocutory order formulating merely the principles on which the new rate schedules should be prescribed, while the second order prescribing the actual rates should be regarded as the final order.

I am not convinced by the opinion of the majority that Judge Holtzoff was wrong, and since I find an alternative ground for reversing the dismissal below I would not hold that the Phase I order was a final, appealable order.

### The Finality of the Phase I Order

My problem with the majority opinion stems from what seems to me to be a misconception of the Phase I order and its place in the Commission's rate proceeding, and a confusion between the concepts of revenues and rates. The majority says, at page 377, that the Phase I order "authorizes" an increase in "operating revenues," and then continues by saying that the "increase in rates . . . [was] in no way left for further decision by the Phase II order." Neither of these statements accurately represents the process by which the Commission considers requests for changes in rates.

Only one order ever "authorizes" any increase in revenue to any of the utili-

ties subject to the Commission's jurisdiction. That order is a Phase II order authorizing the imposition of a new schedule of rates which must be paid to the utility by its customers, thus increasing the amount of revenue received. It is the Phase II order, and that order alone, that completes the rate proceedings and ultimately authorizes changes in consumers' utility rates. The Phase I order merely makes certain findings and determinations (on questions such as the rate base, an appropriate rate of return, allocation of D.C. portion of service, the amount of additional revenue needed to yield the appropriate rate of return, etc.) which are necessarily preliminary to consideration of an appropriate rate schedule. It is in this sense that Judge Holtzoff considered the Phase I order to be interlocutory in nature, and that approach seems proper to me.

Though the Commission has chosen to bifurcate its decisionmaking procedure into these separate phases, no doubt to simplify the hearing and decisional process by dealing with fewer issues at each stage, it is nonetheless a single proceeding that produces only one order effectuating an altered customer rate schedule. The long quotation in the majority opinion, at page 377, from the *Boston Marine Terminal Ass'n* case seems to me to undercut their result, for by permitting review of the Phase I order the majority would "disrupt the orderly process of adjudication" at a stage before "legal consequences"—in the sense of the customers' obligation to pay higher rates— "will flow from the agency action." As the majority concedes, "there was something else for the Commission to do"; that "something else" was to determine and order a new rate schedule, for, contrary to the majority's conclusion NO "increase in rates . . . had been granted" by the Phase I order.

The second and third portions of the majority opinion demonstrate the problems inherent in their determination of the finality question. We have the fortuitous circumstance on these facts that

the Phase II order, confirming appellant's contentions regarding its effect on him, was issued prior to the District Court's disposition below. The majority, at page 378, properly notes, however: "Had the Phase II order eliminated any effect upon Mr. Goodman's rates, we might have a different case." Isn't this possibility precisely why the Phase I order is only interlocutory? I would suggest that the recognition of such a possibility amply demonstrates that the course chosen by the majority would permit a premature interruption of the Commission's ratemaking procedure. The majority's subseqeunt concern that by waiting for the Phase II order's effect "his time to appeal from the Phase I order" might expire, is specious. If the Phase II order is the only final, appealable order, then merely by petitioning for its reconsideration and subsequently appealing to this court, appellant could raise the same contentions he has raised here. This is precisely the procedural context in which Judge Holtzoff ruled in *Leeman, supra,* that "the final order prescribing the actual rates brings up for review the prior order, which formulated the principles on which the new rates should be based." Finally, the entire third portion of the majority opinion and the problems it raises would be obviated by requiring that only the Phase II order is final and appealable.

### The Dismissal was Nonetheless Improper

It is obvious from the foregoing that I consider the majority's decision regarding the finality of the Phase I order unwise, but I do not believe it is even necessary to reach that question to find the District Court's dismissal improper here. When Mr. Goodman petitioned the Commission for reconsideration of the Phase I order, PEPCO responded with the same arguments concerning the finality of that order as those adopted by the District Court in dismissing Mr. Goodman's appeal. The Commission,

however, did not reject the petition on that procedural ground, holding instead:

> [W]e see no need to decide this question in passing on the petition before us. If we concluded that the petition was untimely, however, it would be re-filed [subsequent to the issuance of the Phase II order] and we would have to consider it on its merits. Having now looked at those merits, we have concluded that the petition should be denied on the grounds outlined above. We see no reason why we should not so indicate at this time rather than determining whether we should wait to make our views known [*i. e.* until after the Phase II order is issued]. The result in any event would be the same.

By this order the Commission, in essence, told Mr. Goodman "It is irrelevant to us whether your petition is filed now, to review our Phase I order, or later, to review our Phase II order—we have considered the petition on its merits and have decided it is wholly without merit." Having so forcefully and unqualifiedly informed Mr. Goodman, by means of an official order of the Commission, of the futility of his pursuing any subsequent petition with regard to the Phase II order, I believe the Commission should be estopped from denying in the District Court that a timely petition from a final order had been filed.

It has long since been recognized that "[a] party is not required to pursue a plainly futile remedy . . . ." Spanish International Broadcasting Co. v. FCC, 128 U.S.App.D.C. 93, 104, 385 F.2d 615, 626 (1967); *see, e. g.,* Montana National Bank v. Yellowstone County, 276 U.S. 499, 505, 48 S.Ct. 331, 72 L.Ed. 673 (1928); Waite v. Macy, 246 U.S. 606, 609, 38 S.Ct. 395, 62 L.Ed. 892 (1918). And while many courts continue to assert as a general proposition that governmental units cannot be equitably estopped, an estoppel theory has frequently, and increasingly been used against both federal and local governmental bodies. *See, e. g.,* Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 (1951); and cases collected in 2 K. Davis, Administrative Law Treatise §§ 17.-03, –.06 (1958 & 1970 Supp.). This court recognized at an early date that: "The doctrine of election and estoppel must be applied with great caution to the Government and its officials. But in proper circumstances it does apply." Vestal v. Commissioner of Internal Revenue, 80 U.S.App.D.C. 264, 268, 152 F.2d 132, 136 (1945); *see* United States v. Fox Lake State Bank, 366 F.2d 962, 965–966 (7th Cir. 1966); Semaan v. Mumford, 118 U.S.App.D.C. 282, 335 F.2d 704 (1964); Smale & Robinson Inc. v. United States, 123 F.Supp. 457 (S.D. Cal.1954). *But see* Kondo v. Katzenbach, 123 U.S.App.D.C. 12, 17, 24, 356 F.2d 351, 356, 363 (1966). Professor Davis provides a succinct rationale for allowing an estoppel in cases such as this:

> Since the doctrine of equitable estoppel is founded upon ideas of what is a fair adjustment when one party has relied to his detriment upon what the other party has held out, it is hard to see why the ideas of fairness should differ when one of the parties happens to be a governmental unit · · · ·

2 K. Davis, *supra,* § 17.09 (1958).

In this case the Commission, acting within the scope of its authority through the issuance of a lawful order, represented to Mr. Goodman that they had considered his petition for reconsideration on its merits and that for him to file a subsequent petition on the same grounds at a later time would be a wholly futile exercise. Relying on that representation Mr. Goodman brought his appeal from that order in the District Court, and did not file a petition for reconsideration of the Phase II order. I would hold that an estoppel was thereby established and order the District Court to reverse its dismissal order and consider the appeal on its merits as though it had arisen as an appeal from the final, Phase II, order and the Commission's denial of a petition for reconsideration thereof. Such an estoppel theory would thus wholly avoid the "finality," "af-

fect" and "scope of appeal" issues so questionably resolved by the majority opinion, while providing Mr. Goodman with the judicial review of the Commission's orders to which he is, in all fairness, entitled.