**WASHINGTON URBAN LEAGUE, INC.,**
Petitioner,

v.

**PUBLIC SERVICE COMMISSION OF the DISTRICT OF COLUMBIA, Respondent.**

Washington Gas Light Company, Intervenor.

**No. 6461.**

District of Columbia Court of Appeals.

Argued Sept. 11, 1972.

Decided Oct. 13, 1972.

Timothy L. Jenkins, Washington, D. C., with whom Leslie H. Nelson, Washington, D. C., was on the pleadings, for petitioner.

Linus H. Deeny, Asst. Corp. Counsel, with whom C. Francis Murphy, Corp. Counsel, and C. Belden White, II, Asst. Corp. Counsel, were on the pleadings, for respondent.

Paul H. Harrington, with whom S. S. Hollingsworth, Henry F. Krautwurst, and Paul H. Ford, Washington, D. C., were on the pleadings, for intervenor.

Before REILLY, Chief Judge, and FICKLING and YEAGLEY, Associate Judges.

PER CURIAM:

■ The Washington Urban League (petitioner) is an intervenor in a rate proceeding before the Public Service Commission of the District of Columbia (P.S.C.). The petitioner appeals from P.S.C. Order No. 5494 restricting the Washington Urban League's submission of evidence of Washington Gas Light Company's (WGLCO's) allegedly discriminatory employment practices to evidence that would tend to show that the practices *affect* WGLCO's revenues, expenses, or service within the District of Columbia. After a careful review of that order and in consideration of the extensive oral argument, we conclude that P.S.C. Order No. 5494 is not a final order within the meaning of D.C.Code 1967, § 43-705 (Supp. V, 1972). Therefore, finding ourselves without jurisdiction, we must grant the respondent's motion to dismiss.

On July 9, 1971, Washington Gas Light Company applied for a rate increase. The case was docketed as P.S.C. Formal Case 567. During the pre-hearing procedure, the Urban League was granted permission to intervene. At the pre-hearing conference, the Urban League proposed that the Commission consider the matter of WGLCO's allegedly discriminatory employment practices in and of themselves in deciding the merits of the rate increase application. The P.S.C. in its order of January 10, 1972, rejected this proposal. While ac-

knowledging its power and duty to act in this area, it restricted the Urban League's submission of evidence as set out above. The Commission, however, did suggest to the petitioner that it would be willing to hold a separate hearing on the particular matters which the Urban League wished to assert. The Urban League then petitioned for reconsideration of P.S.C. Order No. 5494, which was denied.

■ It is evident from the extended oral argument and the repeated attempts to seek review of this order that the petitioner harbors a misconception as to what constitutes a final order within the meaning of D.C.Code 1967, § 43–705 (Supp. V, 1972). The Supreme Court has consistently held that for an order such as this to be final, it must "impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process." Chicago & Southern Air Lines, Inc. v. Waterman S. S. Corp., 333 U.S. 103, 113, 68 S.Ct. 431, 437, 92 L.Ed. 568 (1948). Order No. 5494 merely defines the issues to be examined in the rate hearing and limits evidence to that which is relevant to those issues.

The order is final in the sense that it requires the petitioner to either conform its evidence to the issues or to institute a separate hearing, but evidentiary rulings are typically interlocutory. In City of San Antonio v. C. A. B., 126 U.S.App.D.C. 112, 115, 374 F.2d 326, 329 (1967), the court stated:

No principle of administrative law is more firmly established than that of agency control of its own calendar. Practical problems of calendar administration confront an agency whenever related applications are pending at the same time. Consolidation, scope of the inquiry, and similar questions are housekeeping details addressed to the discretion of the agency and, due process or statutory considerations aside, are no concern of the courts. . . . (Footnotes omitted.)

■ Courts are especially reluctant to interfere with agency procedural decisions. Thermal Ecology Must Be Preserved v. A. E. C., 139 U.S.App.D.C. 366, 433 F.2d 524 (1970); Bokat v. Tidewater Equipment Co., 363 F.2d 667 (5th Cir. 1966); Chicago Automobile Trade Ass'n v. Madden, 328 F.2d 766 (7th Cir. 1964).

■ Petitioner's *mere allegation* of constitutional violations is not enough to convert an evidentiary ruling into a final order. As the Circuit Court of Appeals held in Chicago Automobile Trade Ass'n v. Madden, *supra* at 769:

An allegation of unconstitutional harm is insufficient to warrant equitable intervention where pursuit of administrative remedies might ultimately render judicial disposition of such issues unnecessary. . . . And, the principle which requires administrative finality as a prerequisite to judicial review has particular force where, as here, the interlocutory order sought to be reviewed relates to the agency's case-handling procedures.

. . . . . .

■ The denial of every interlocutory appeal is premised on the assumption that an appeal from a final order provides an effective method of correcting agency errors. The possibility that an agency may make a mistake that is not immediately reviewable by the court is the price we pay for the advantages of the administrative process. Petitioner will have an ample opportunity to assert his contentions in an appeal from the agency's final order.

Motion to dismiss granted.