**Theodore LYONS, Appellant,**

v.

**William J. BARRETT, Printing Office, et al., Appellees.**

**No. 86–5696.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 16, 1987.

Decided July 8, 1988.

Michael P. Arra, Washington, D.C., for appellant.

John D. Bates, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and Michael J. Ryan, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees. R. Craig Lawrence, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellees.

Before MIKVA and WILLIAMS, Circuit Judges, and GORDON,* Senior District Judge.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

Appellant Theodore Lyons was employed in a nontenured position at the U.S. Government Printing Office (GPO). After two years of service, he was terminated following an internal investigation into charges that he had sexually harassed a female coworker. Lyons brought an action in federal district court challenging his dismissal. He alleged, among other claims, that the GPO violated his fifth amendment due process rights in terminating him, and that GPO employees conspired in violation of 42 U.S.C. § 1985 to have him fired because he is black and because of his work on behalf of minority employees at the GPO.

The district court dismissed appellant's § 1985 claim. It found merit, however, in his due process claim. The court held that Lyons was entitled to a name-clearing hearing in which to confront the charges against him. *See Doe v. Department of Justice,* 753 F.2d 1092, 1102–12 (D.C.Cir.

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1985). It ordered the GPO to hold such a hearing and dismissed the case. On appeal, Lyons contends that the district court erred in dismissing the § 1985 claim and contends that a name-clearing hearing is not an adequate remedy for the due process violations that occurred.

The district court was correct to order a name-clearing hearing. It erred, however, in finding that such a hearing would necessarily provide all of the relief to which appellant is entitled and in dismissing the action. The long delay in according Lyons a hearing may have worked a compensable due process injury. After the name-clearing hearing is held, appellant must have the opportunity to return to district court if he so chooses and to argue that he is entitled to additional remedies, including damages, for the violation of his due process rights. Until such time, we will not render a decision on the district court's dismissal of the § 1985 claim.

## I. BACKGROUND

Theodore Lyons was employed as Executive Assistant to Danford Sawyer, Public Printer and head of the U.S. Government Printing Office from August 17, 1981 to August 31, 1983. Lyons was the first black to hold this position. In the fall of 1981, Lyons hired Dorothy L. Proctor to work as his administrative assistant. In December 1982, Proctor complained for the first time to a GPO staff member that Lyons was sexually harassing her. Michael F. DiMario, the Assistant Public Printer, stated that Proctor told him at that time that she wanted to switch out of her current position because Lyons "was trying to get her to go out with him." In July 1983, Lyons transferred certain responsibilities from Proctor to himself and his special assistant. Shortly thereafter, Proctor complained to Hazel Devers–Lowe, the head of the GPO's Equal Opportunity Counseling and Complaints Processing Division, that Lyons had sexually harassed her and misused government telephones. Proctor made the same allegations to DiMario; Garrett Brown, the GPO General Counsel; and William Barrett, the Deputy Public Printer. This group informed Sawyer of the allegations and recommended that he reassign Proctor, which he did.

The GPO investigated Proctor's allegations. On August 22, 1983, Sawyer directed the GPO Inspector General, Michael Brito, to investigate the charges. The following day, Brown and another GPO official informed Lyons of the charges. Lyons alleges that the second official, Hugh Cannon, Director of the GPO's Office of Congressional Relations, told him that the investigation might be discontinued if he were willing to leave the GPO and accept a job with the Republican National Committee. Lyons states that he rejected this offer and maintained that he would be cleared of the allegations.

The Inspector General's office commenced an investigation of Proctor's allegations. As part of this investigation, Brito took affidavits from three other female GPO employees. These affidavits were not disclosed because they mentioned instances of violent behavior by Lyons, and the GPO officials supervising the investigation believed disclosure might threaten the affiants' safety. Brito has stated, however, that the affidavits gave further credibility to the allegations of sexual harassment.

On August 31, 1983, Sawyer, Barrett, and Brown met with Lyons. At the meeting, Sawyer gave Lyons a letter stating that he no longer had "trust and confidence" in him and requesting that he resign. When Lyons asked why, Sawyer told him that there were pending EEO charges against him that he described as "very grim," although he said that he himself was not making a decision about Lyons' guilt or innocence. Lyons signed the letter of resignation that Sawyer had prepared for him and was escorted from the building by security personnel.

Lyons gives a very different account of the origin of his difficulties with the GPO management. He denies the allegations of sexual harassment, and contends that he was forced out because he championed the cause of minorities and women within the GPO. He contends that he performed a survey of minority employees at the GPO

and determined that widespread violations of antidiscrimination laws existed at the agency. Lyons maintains that he incurred the wrath of GPO management when he was quoted in a newspaper article commenting on these findings, and that he was reprimanded for participating in the story. The district court noted that his complaint "sets forth in detail Lyons' activities on behalf of minority and female employees at the GPO. It also alleges that some GPO officials opposed and resented these efforts." *Lyons v. Barrett*, No. 84–3640, *Memorandum Opinion* at 2 (D.D.C. Sept. 22, 1986).

Lyons filed an Equal Employment Opportunity (EEO) complaint alleging racial discrimination in connection with his termination. On October 31, 1984, after an EEO investigation, the agency found "no probable cause." Lyons commenced this action in District Court on November 30, 1984. Several of Lyons' original claims were dismissed by the district court. When the case went to trial, Lyons presented two distinct claims. First, he contended that in terminating his employment the GPO denied him his due process rights under the fifth amendment. Second, appellant contended that the appellees violated 42 U.S.C. § 1985 by conspiring to have him discharged because of his race and his work on behalf of minority employees of the GPO.

The district court dismissed appellant's § 1985 claim for two reasons. First, it found that § 1985 was inapplicable to the alleged conspiracy. The court found that the statute applied exclusively to conspiracies to deprive a person of equal protection and equal privileges and immunities, and therefore did not cover the alleged conspiracy by the appellees to deprive Lyons of due process. Second, the court found that appellant's § 1985 claim failed because he did not allege specific facts to support his claim of a conspiracy to discriminate. Because it found no merit to the § 1985 claim, the district court did not reach the question of whether appellees had governmental immunity, as they contended, from the conspiracy charge.

The district court found merit, however, to appellant's fifth amendment due process claim. *Memorandum Opinion* at 8. It held that because he had been deprived of his liberty interest in his reputation in the course of termination, he had a due process right under *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977), to a name-clearing hearing to clear his name of the charges made against him. The court rejected appellees' contention that Lyons had already received all the process he was due in his EEO hearing. It noted that the subject of that hearing was whether the GPO had discriminated against him on the basis of race, not whether the allegations made against him were true. The court ordered the GPO to provide Lyons with a name-clearing hearing.

Appellant appeals from the district court's decision. On appeal, he has added three additional contentions based on his objections to the district court's disposition of his case. First, he contends that the district court erred in dismissing his § 1985 claim on a summary judgment motion. Second, appellant contends that the district court failed to set sufficient guidelines for the name-clearing hearing that it ordered. Finally, he contends that the district court erred in holding that a name-clearing hearing is sufficient remedy for the due process violation.

## II. Discussion

An initial question presented by this case is whether the decision below constitutes a final appealable order. It is true that a remand for a hearing is generally not a final order. *Eluska v. Andrus*, 587 F.2d 996, 999 (9th Cir.1978). But it is also true that such a remand is final if it can be determined that the order was "equivalent to a dismissal." *Id.* Unlike cases like *Eluska*, in which the Ninth Circuit held that the district court did not intend to dismiss the case, the court below expressly dismissed appellant's claims with prejudice. Under these circumstances, we have no trouble finding that the district court's decision "ends the litigation on the merits and leaves nothing for the court to

do but execute the judgment," *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945), and that the order was final and appealable.

Appellant maintains that his termination by the GPO violated his due process rights under the fifth amendment. A threshold question in such an inquiry is whether the litigant has been deprived of a protected interest. Appellant did not have a property interest in his job at the GPO for purposes of fifth amendment analysis. The Supreme Court has instructed that an employee has a property interest in his job only if he has a "legitimate claim of entitlement to continued employment absent 'sufficient cause.'" *Perry v. Sindermann*, 408 U.S. 593, 602–603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972). As Executive Assistant, Lyons served at the pleasure of the Public Printer. Although he "surely had an abstract concern in" retaining his job, because it was a discretionary appointment of the public printer he did not have a property interest in it sufficient to invoke due process rights. *Board of Regents v. Roth*, 408 U.S. 564, 578, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

Lyons did, however, have a protected liberty interest in his reputation. The Supreme Court has long recognized that a liberty interest may be implicated when an attack is made upon an individual's "good name, reputation, honor, or integrity ..." *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). An injury to reputation alone does not constitute a deprivation of a liberty interest. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Combined with dismissal from a government job, however, injury to reputation can rise to the level of a liberty deprivation. *Doe*, 753 F.2d at 1110. In the case at bar, appellant was discharged from his government position after an investigation into charges that he sexually harassed a fellow employee. It is clear that the circumstances of his termination had the potential to imperil "his standings and associations in his community." *Roth*, 408 U.S. at 573, 92 S.Ct. at 2707. We have no difficulty on this record finding that appellant had a protected liberty interest that was implicated in his dismissal.

This court has held that when a nontenured government employee is deprived of this particular liberty interest the appropriate remedy is a hearing in which the dismissed employee is given an opportunity to refute the charges and clear his name. *Doe*, 753 F.2d at 1112. Lyons was entitled to such a hearing. The obligation to offer it rested with the GPO, and it failed to do so. *Doe*, 753 F.2d at 1112 n. 23. The district court was correct in holding that the EEO proceeding that Lyons had as a result of his complaint of racial discrimination did not constitute a name-clearing hearing. It did not address allegations he made against GPO officials, and did not afford him a direct opportunity to answer the defamatory charges raised against him. The district court properly held that Lyons was deprived of his due process right to a name-clearing hearing.

The district court's order to the GPO to hold a name-clearing hearing for Lyons is correct as far as it goes. It does not go far enough, however, in two distinct areas. First, the district court erred in not indicating with greater specificity the type of name-clearing hearing the GPO must conduct. The district court stated in its decision only that it would order the appellees "to provide [appellant] with notice of the allegations that inspired his removal and an opportunity to refute those charges at a name-clearing hearing." *Memorandum Opinion* at 9. Lyons contends that this direction is too vague and that the district court was obliged to establish more precise guidelines for how the hearing would proceed. In addition, he challenges several specific aspects of the procedural guidelines set by the GPO—without any guidance from the district court—for his hearing. For example, he challenges the GPO's decision that he will not be permitted to cross-examine witnesses at the hearing, and he challenges the decisionmaker designated by the GPO as biased.

Courts generally accord agencies broad discretion in fashioning hearing proce-

dures. *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 543, 98 S.Ct. 1197, 1211, 55 L.Ed.2d 460 (1978). This is not, however, an invariable rule. *Id.* This court has long held that the meaning of due process "will vary with the type of proceeding involved ..." *Amos Treat & Co. v. SEC*, 306 F.2d 260, 263 (D.C.Cir. 1962). Name-clearing hearings are different from most hearings conducted by an agency. Unlike most hearings, they do not address the correctness of a particular course of action. They have no effect on the underlying decision to terminate an employee. *Doe*, 753 F.2d at 1113 n. 25 (decision ordering Department of Justice to grant a name-clearing hearing "does not in any way affect actual government personnel decisions ...") (emphasis omitted). They simply permit a dismissed employee to "clear his name." *Codd*, 429 U.S. at 627, 97 S.Ct. at 884 (citation omitted). The precise contours of name-clearing hearings have been "prescribed with substantial flexibility ..." *Campbell v. Pierce County*, 741 F.2d 1342, 1345 (11th Cir.1984). The discretion to tailor the conditions of a hearing to a particular dismissal is properly vested in a district court. This court has stated previously that when a name-clearing hearing is called for, it is the district court's obligation "to determine the precise nature of the name-clearing porcedure that the [government] must provide ..." *Doe*, 753 F.2d at 1113. The court below failed to heed this injunction. It should have given the GPO a clearer indication of the form that the name-clearing hearing should take.

This court has not set forth specific standards for how name-clearing hearings should be conducted, and we do not issue any blanket rule today. As we have noted, the district court has considerable discretion in fashioning the procedural trappings of such hearings. We have, however, previously directed a district court's attention to other courts' holdings on this point. *See Doe*, 753 F.2d at 1114 n. 27 ("[W]e ... note that other courts considering name-clearing hearings have 'required that the claimant have notice of the charges against [her], and an opportunity to refute, by cross-ex-amination or independent evidence, the allegations which gave rise to the reputational injury.'") (citation omitted). We express no view on appellant's particular procedural claims that he was entitled to cross-examine witnesses at his name-clearing hearing and that the GPO chose an unacceptable decisionmaker. We do hold, however, that these are determinations to be made by the district court rather than the GPO. Of course, the remand may frame the procedural guidelines in somewhat general terms, to allow the GPO some flexibility in initially choosing a way of assuring adequate protection of appellant's rights.

The second difficulty with the district court's holding on the due process issue is its assertion that ordering the name-clearing hearing provides a full remedy for the deprivation of Lyon's rights. Lyons contends that the name-clearing hearing is by this time inadequate and that he is entitled to damages because of the harm that has accrued to him owing to the delay in granting him a name-clearing hearing. Appellant was discharged from his position on August 31, 1983. In the interim, he has had to live with the possibly "false and defamatory impression" created by the circumstances of his termination. *Codd*, 429 U.S. at 628, 97 S.Ct. at 884. We do not share the district court's conviction that a name-clearing hearing at this late stage will necessarily remedy the due process injury suffered by appellant.

■■■■ By its very nature, a name-clearing hearing is something that loses value the longer it is delayed. When an employee is dismissed under stigmatizing circumstances and deprived of an opportunity to clear his name until several years later, that delay itself may constitute a compensable due process injury to the employee. *Endicott v. Huddleston*, 644 F.2d 1208, 1216–17 (7th Cir.1980). Appellant contends in this appeal that the name-clearing hearing will not be enough by itself to remedy the injury done to him in the course of his termination, and seeks additional remedies. We believe that it is impossible to measure accurately what damage, if any, will remain unremedied by the name-clearing

hearing until that hearing is held. After the hearing, he will have an opportunity to return to the district court and present his case for taking additional remedial action. The district court will then have to consider the extent to which the delay in holding the hearing may have rendered it "ineffectual" in remedying some of the harm done. *Rodriguez de Quinonez v. Perez,* 596 F.2d 486, 491 (1st Cir.1979).

It is, of course, possible that after the hearing is held the district court will find that appellant suffered no injury due to the deprivation. There are several circumstances in which a court might find that no injury occurred due to the delay. For example, the hearing may indicate that the GPO did such a good job of keeping the allegations secret that no harm was done to appellant's reputation. *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976). But determinations of this sort that would negate damages can only be made *after* the name-clearing hearing has been held. The district court was in no position to state in advance of the name-clearing hearing that such a hearing would alone remedy the due process deprivation. We find that the district court erred in dismissing the action and should instead have retained the case until after the GPO hearing has been held.

We render no decision at this point on appellant's § 1985 claim or on appellees' claim of qualified immunity to that charge. The district court appears to be correct in finding that so far appellant has failed to allege specific facts to support his theory of conspiracy to discriminate against him. *Memorandum Opinion* at 9–10. However, it is possible that at his name-clearing hearing additional facts will become known that support his claim. Appellant is entitled to the benefit of any information that he might obtain at that hearing. We will therefore not consider the conspiracy claim at this time.

### III. Conclusion

We remand the case to the district court to set clear guidelines for the GPO hearing. In addition, we reverse the district court's

dismissal of the action. We find that appellant's claim that the name clearing hearing is not alone sufficient remedy for the deprivation he suffered can only be appropriately addressed after the hearing has been held. Finally, because appellant was entitled to the benefit of any information that he may obtain at the name-clearing hearing, we decline at this point to review the district court's dismissal of appellant's § 1985 claim. After the hearing, appellant will have an opportunity once again to pursue his claims before the district court. Presumably an appeal would then lie from any decision of the district court.

The decision of the district court is

*Reversed in part and remanded.*