**BRANDYWINE LIMITED PARTNER-SHIP, Albemarle Towers Co., and Shoremede Co. Ltd. Partnership, Petitioners,**

**v.**

**DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, Respondent.**

**Brandywine Tenants Ass'n, Albemarle Tenants Ass'n, and Cleveland House Tenants Ass'n, Intervenors.**

**Nos. 92–AA–885, 92–AA–886 and 92–AA–1302.**

District of Columbia Court of Appeals.

Argued June 10, 1993.
Decided Sept. 23, 1993.

judge on a full record.

Vincent Mark J. Policy, with whom Richard W. Luchs, Washington, DC, was on the briefs, for petitioners.

Eric M. Rome, Washington, DC, for intervenors.

Charles L. Reischel, Deputy Corp. Counsel, with whom John Payton, Corp. Counsel, Washington, DC, was on the briefs, for respondent.

Before ROGERS, Chief Judge, and STEADMAN and SCHWELB, Associate Judges.

PER CURIAM:

These are consolidated petitions by housing providers seeking review of the decisions of the D.C. Rental Housing Commission, reversing the hearing examiners' decisions to grant capital improvement petitions under D.C.Code § 45–2520 (Repl.1990). The capital improvement petitions for three apartment buildings sought approval of a number of additions, including microwave ovens, vanities, dishwashers and extra bathroom mirrors, that the providers claimed fell within the scope of § 45–2520. The Commission dismissed the petitions with respect to these four additions based on its conclusion that they did not qualify as capital improvements under the statute.[1] With regard to the other proposed additions in the petitions, the Commission remanded the proceedings to the Rental Accommodations and Conversion Division. In this court, petitioners principally attack the Commission's ruling that the phrase "enhance habitability" in § 45–2520 is limited by items addressed in the D.C. Housing Code or present in the accommodation when the lease begins.[2]

After briefing, the court, *sua sponte*, asked the parties to address whether the court had jurisdiction, and supplemental briefs were filed. Having reviewed those briefs, we conclude that the court lacks jurisdiction to consider the Commission's decisions dismissing in part and remanding

---

1. In the *Albemarle* case and the *Brandywine* case with regard to dishwashers, the Commission found that there was not substantial evidence to show that these additions would "enhance habitability" under § 45–2520. In the *Shoremede* and *Brandywine* cases, the Commission ruled, as a matter of law, that these additions were not capital improvements under the statute.

2. Thus, for example, in the *Shoremede* case, the Commission ruled on October 20, 1992, that "[a] determination of what makes a housing accommodation 'habitable' must begin with an examination of the Housing Code.... [T]he addition of ... items [not addressed in the Housing Code] where they do not already exist [in the housing unit] cannot be considered to protect or enhance habitability for purposes of the Act." Similarly, in the *Brandywine* case, the Commission, on July 9, 1992, viewed the Housing Code as the limiting standard, citing *Winchester Mgmt. Corp. v. Staten*, 361 A.2d 187, 189 (D.C. 1976) for a definition of habitable housing under the housing code and referring to the four statutory standards governing capital improvements, which were described in the Commission's decision of *1841 Columbia Road Ltd. Part-*

*nership v. 1841 Columbia Road Tenant Ass'n*, CI 20,082 (RHC Dec. 23, 1987). Again, the Commission concluded that if an improvement was not "address[ed]" by the Housing Code or already present in the housing accommodation it would not be considered as enhancing habitability under the Act, explaining that it was bound to define "habitability, which is a term of art, in a way that accords with its standard legal use," citing, *inter alia, Fort Chaplin Tenants Association v. Fort Chaplin Park Associates*, CI 20,477 (RHC June 25, 1992). On June 25, 1992, the Commission observed in *Albemarle*, that while such habitability

> may require new equipment or new appliances ... existing tenants are not required to pay the costs to rehabilitate their apartments to satisfy the perceived tastes of prospective tenants for items that were not initially included in their apartment units at the time ... the lease commenced. On the other hand, tenants in a proper case must pay the costs of capital improvements to maintain existing equipment or to upgrade it when it becomes obsolete or otherwise affect[s] the health, safety, or security of the tenants or the habitability of the housing accommodation.

in part the capital improvements petitions because these decisions were not final orders. *See Warner v. Dept. of Employment Servs.,* 587 A.2d 1091, 1093–94 (D.C. 1991); D.C.Code §§ 1–1502(11), –1510(a) (Repl.1990), 45–2529 (Repl.1990).

Because of the considerations of administrative and judicial efficiency underlying the finality requirement long recognized by the court, the arguments presented by petitioners and intervenors in support of the court's jurisdiction of these petitions for review cannot prevail. The Commission has remanded in part and dismissed in part. Therefore, the court may face still another petition arising out of the same capital improvements petitions regarding the remanded items. As to the capital items that the Commission has dismissed from the petitions, the court can address the claims of error with regard to those items once the agency has completed its review of the petitions. *See Newport News Shipbuilding and Dry Dock Co. v. Director, Office of Workers' Compensation Programs,* 590 F.2d 1267, 1268–69 (4th Cir.1978) (per curiam) (not a final order where order affirmed temporary disability award, partially vacated permanent disability award, and remanded case for calculation of damages), cited in *Warner, supra,* 587 A.2d at 1093. *See generally* 15b WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE: JURISDICTION & RELATED MATTERS 2D § 3914.32 at 238–39 (1992).

Although petitioners and intervenors seek application of a pragmatic theory of finality that would allow the court to reach the merits now, *see Brown Shoe Co. v. United States,* 370 U.S. 294, 306, 82 S.Ct. 1502, 1513, 8 L.Ed.2d 510 (1962); *see, e.g.*

*Rachal v. Rachal,* 412 A.2d 1202, 1204 (D.C.1980), they have failed to show that they will suffer irreparable harm by delay in review of the Commission's decisions until there is a final agency decision on the capital improvement petitions. *See Warner v. Dept. of Employment Services, supra,* 587 A.2d at 1093–94; *Randolph–Sheppard Vendors of America v. Weinberger,* 254 U.S.App.D.C. 45, 63–64, 795 F.2d 90, 108–09 (1986); D.C.Code § 45–2520(g) (Repl.1990); *see also Washington Urban League, Inc. v. Public Service Comm'n,* 295 A.2d 906, 908 (D.C.1972) ("[t]he possibility that an agency may make a mistake that is not immediately reviewable by the court is the price we pay for the advantages of the administrative process"). The items dismissed represent only a small number of the additions in the capital improvements petitions.

Other arguments by petitioners, in which intervenors join, fail to bring the petitions within any exceptions to the finality requirement. There may be circumstances, as indicated by the citations in the parties' supplemental briefs, where the considerations underlying finality will cause the court to conclude that it should review the final part of a non-final order of an agency.[3] *Cf.* D.C.Code § 1–1502(11) (Repl.1990). However, no such situation is presented in the instant case. Moreover, in response to the argument that the court should review the Commission's interpretation now because the Commission's decisions interpreting § 45–2520 (capital improvements) are having a preclusive effect on other capital improvement petitions before the agency, we note that the parties advised us during oral argument of another

**3.** Among the cases cited by the parties were: *Levy v. Board of Zoning Adjustment,* 570 A.2d 739, 749 n. 14 (D.C.1990); *Dambron v. Capitol House Assoc.,* 431 A.2d 580, 584 n. 6, 585–87 (D.C.1981); *People's Counsel v. Public Service Comm'n,* 414 A.2d 516, 517–18 (D.C.1980); *Occidental Petroleum Corp. v. S.E.C.,* 277 U.S.App. D.C. 112, 117, 873 F.2d 325, 330 (1989); *Lyons v. Barrett,* 271 U.S.App.D.C. 151, 154, 851 F.2d 406, 409 (1988); *Washington Metropolitan Area Transit Authority v. Director, Office of Worker's Compensation Programs,* 262 U.S.App.D.C. 367, 368–69, 824 F.2d 94, 95–96 (1987); *Midwestern Gas Transmission Co. v. Federal Energy Reg. Comm'n,* 191 U.S.App.D.C. 80, 589 F.2d 603 (1978); *Goodman v. Public Service Comm'n,* 151 U.S.App.D.C. 321, 323–25, 467 F.2d 375, 377–79 (1972); *Travelstead v. Derwinski,* 978 F.2d 1244, 1247–49 (Fed.Cir.1992); *Cotton Petroleum v. United States Dept. of Interior,* 870 F.2d 1515, 1521–22 (10th Cir.1989); *National Steel and Shipbuilding Co. v. Director, Office of Worker's Compensation Programs,* 626 F.2d 106, 108 (9th Cir.1980).

case pending before the court that presents the same challenge to the Commission's interpretation of § 45–2520. *See Fort Chaplin Park Associates v. D.C. Rental Housing Commission,* No. 92–AA–843.

Accordingly, we dismiss the petitions for review.