LOURIE, Circuit Judge.
 

 The government appeals from the July 3, 1991 decision of the Court of Veterans Appeals (CVA), Appeal No. 89-5, reversing the decision of the Board of Veterans’ Appeals, which affirmed the Veterans Administration’s (VA’s) decision denying eligibility for retroactive release from liability on a VA-guaranteed home loan:. The court remanded the case for a new evaluation. 1 Vet.App. 344. We find that we have jurisdiction to decide this appeal and we affirm on the merits.
 

 BACKGROUND
 

 In December 1980, Charles W. Travel-stead purchased a home with money advanced by a private lender. The loan was secured in part by a VA home loan guaranty in the amount of $27,500. In 1984, Travelstead sold the home to Hollis Copeland. As stated in the standard instructions printed in every guaranty application, such sale did not release Travelstead from liability to the VA if Copeland defaulted. Application for release must have been made to the Secretary and evaluated under standards set.forth at 38 U.S.C.S. § 3713(a) (Law Co-op. Supp.1992)
 
 [1]
 
 Travelstead made no such application.
 

 In February of 1987, the VA received notices of foreclosure and default from the private lender. It promptly informed Trav-elstead that he would be liable to the government if the VA paid a claim under its guaranty. In November of 1987, a foreclosure and sale of the house left a deficiency of $20,145.74. Pursuant to its guaranty, the VA paid the private lender this amount and then demanded indemnity from Travelstead.
 

 In November of 1988, Travelstead applied to the VA for a waiver of indebtedness under 38 U.S.C.S^ § 5302(b) (Law Coop. Supp.1992) (formerly 38 U.S.C.
 
 *1246
 
 § 3102(b))
 
 [2]
 
 . This statute permits the VA to “waive payment of an indebtedness” with respect to a guaranteed loan “where the Administrator determines that collection of such indebtedness would be against equity and good conscience.” The application was denied by the Veterans Affairs Committee on Waivers and Compromises; the denial was affirmed by both the Board and the court.
 
 [3]
 
 Because the court’s § 5302 ruling was not appealed, this waiver provision is not before us.
 

 The statutory basis for Travelstead’s entitlement to a waiver then shifted from § 5302 to 38 U.S.C.S. § 3713(b) (Law Co-op. Supp.1992)
 
 [4]
 
 when the Court of Veterans Appeals raised
 
 sua sponte
 
 the applicability of this statute, which provides for a retroactive release from liability. To justify its consideration of this issue, the court cited its jurisdictional statute, 38 U.S.C. § 4052(b) (1988),
 
 [5]
 
 which states that “[r]e-view in the Court shall be on the record of proceedings before the Administrator and the Board.” Because the record showed that a VA examiner had considered Travel-stead (apparently without request) for a retroactive release, the court reviewed his entitlement to such release as part of its plenary review of the administrative record.
 

 The court found the procedure applied by the VA in evaluating Travelstead’s eligibility for a retroactive release to be contrary to the express language of the statute. The procedure was evidenced by a document styled “Check Sheet — Release from Liability Under Section 1817(b) 38 U.S.C.,” in which a VA examiner marked a box indicating that Copeland had “defaulted during 1st 12 mos; not considered satisfactory risk.” The check sheet contained no other possible reasons for denial of release, implying that the post-transfer default was all that was considered. The court found this evaluation inadequate, stating that:
 

 The law requires the VA to look at the facts as they existed at the time of transfer, not after transfer, in order to determine whether a veteran would have been entitled to a release from liability had he applied for it. We trust that the VA will change this form to eliminate the legally incorrect language and that determinations as to eligibility for a release of liability under a guaranty will thereafter be made in accordance with the law.
 

 Accordingly, the court remanded to the Board for a “proper adjudication of [Trav-elsteadjs entitlement to a release of liability.” The government appeals.
 

 ISSUES PRESENTED
 

 1. Does the “finality rule” bar this court from reviewing a decision of the Court of Veterans Appeals which: 1) overturns the Secretary’s established standard for denying a retroactive release; and 2) remands to the Board for application of the proper standard?
 

 2. May the VA rely solely upon the post-transfer payment record of a transferee who has defaulted in determining that a veteran is not eligible for a retroactive release under 38 U.S.C. § 3713(b)?
 

 
 *1247
 
 JURISDICTION
 

 At oral argument, we
 
 sua sponte
 
 questioned our jurisdiction over the government’s appeal and requested supplemental briefing on the subject. Having reviewed the parties’ submissions on this question, we find that we do have jurisdiction despite the fact that the court did not finally adjudicate Travelstead’s entitlement to a retroactive waiver.
 

 We have previously held that an order remanding a matter to an administrative agency for further findings and proceedings is not a final appealable order.
 
 Cabot Corp. v. United States,
 
 788 F.2d 1539, 1542-43 (Fed.Cir.1986) (finding no jurisdiction over agency appeal of order of the Court of International Trade remanding to the International Trade Administration). If one were to substitute the Court of Veterans Appeals for the Court of International Trade, and the Board of Veterans’ Appeals for the International Trade Administration, then the procedural posture of this case is similar to that of
 
 Cabot Corp.
 

 [6]
 

 Furthermore, our
 
 Cabot Corp.
 
 analysis was general and uncategorical, suggesting that appeals of such orders would vitiate the important interests served by the final judgment rule.
 
 [7]
 
 We noted that this rule “helps preserve the respect due trial judges by minimizing appellate-court interference____”
 
 Cabot Corp.
 
 788 F.2d at 1542, (citing
 
 Flanagan v. United States,
 
 465 U.S. 259, 263-64, 104 S.Ct. 1051, 1053-54, 79 L.Ed.2d 288 (1984)). This rule also saves “the expense and delays of repeated appeals in the same suit.”
 
 Woodard v. Sage Products, Inc.,
 
 818 F.2d 841, 845, 2 USPQ2d 1649, 1651 (Fed.Cir.1987) (in banc) (citing
 
 McLish v. Roff,
 
 141 U.S. 661, 666, 12 S.Ct. 118, 120, 35 L.Ed. 893 (1891)). We add to this our preference for review of a fully-developed record in contrast to determination of legal questions in the abstract.
 

 Nevertheless, the subsequent decision of the United States Supreme Court in
 
 Sullivan v. Finkelstein,
 
 496 U.S. 617, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990), requires us to decide this appeal at the present stage of proceedings. The remand order in
 
 Finkel-stein
 
 was rendered under circumstances similar to those present here. Mrs. Finkel-stein’s application for widow’s disability benefits under 42 U.S.C. § 423 was denied by the Social Security Administration and appealed to an administrative judge. The Social Security Act makes administrative adjudication decisions subject to review in the United States District Courts. 42 U.S.C. § 405(g) (1988).
 
 [8]
 
 Like the Court of
 
 *1248
 
 Veterans Appeals here, the district court found the Secretary’s procedure for determining entitlement contrary to the statute, and remanded for a redetermination under the proper legal standard.
 
 [9]
 
 The Supreme Court held this order to be a final “judgment” under § 405(g) appealable by the Secretary under 28 U.S.C. § 1291. Justice White reasoned that:
 

 What happened in this case is that the District Court entered “a judgment ... reversing the decision of the Secretary, with ... remanding the cause for a rehearing.” The District Court’s remand, order was unquestionably a “judgment,” as it terminated the civil action challenging the Secretary’s final determination that respondent was not entitled to benefits, set aside that determination and finally decided that the Secretary could not follow his own regulations in considering the disability issue. Furthermore, should the Secretary on remand undertake the inquiry mandated by the District Court and award benefits, there would be grave doubt, as the Court of Appeals recognized, whether he could appeal his own order.
 

 496 U.S. at 625, 110 S.Ct. at 2664.
 

 Although the specific holding of
 
 Finkelstein
 
 is limited to appeals under § 405(g) of the Social Security Act, we do not find its precedential effect so limited.
 
 Cf. Monongahela Valley Hosp., Inc. v. Sullivan,
 
 945 F.2d 576, 586 (3d Cir.1991) (following
 
 Finkelstein
 
 to find appealable a remand to Health and Human Services, ordered on judicial review under 42 U.S.C. § 1395oo(f)(l) of a Medicare reimbursement determination). If, under the statute governing the jurisdiction and practice of the Court of Veterans Appeals, its order in this case “reversing the decision of the Secretary,” and deciding “that the Secretary could not follow his own regulations” “terminated the [] action challenging the Secretary’s final determination,” then it is final and appealable under
 
 Finkelstein. Monongahela Valley Hosp.,
 
 945 F.2d at 587.
 

 We review “decision[s] of the United States Court of Veterans Appeals” that have been “entered in a case.” 38 U.S.C.S. § 7292(a)(2) (Law Co-op. Supp.1992). The court is itself required, “to the extent necessary to its decision and when presented,”
 
 inter alia,
 
 to interpret statutory provisions, determine the applicability of their terms to an action of the Secretary, and to “compel action of the Secretary unlawfully withheld or unreasonably delayed.” 38 U.S.C.S. § 7261(a) (Law Co-op. Supp.1992). Section 7267(b), under the caption “Decisions,” provides that a determination of a judge or panel in any proceeding before the court “constitutes the judge or panel’s final disposition of the proceeding.” 38 U.S.C.S. § 7267(b) (Law Co-op. Supp.1992). Here, the court rendered a “decision” interpreting a statute (§ 3713) and compelling action of the Secretary, on remand, contrary to the Secretary’s prior ruling. This “decision” was a final disposition of the proceeding respecting the Secretary’s practice, and it was entered by the Clerk of the Court of Veterans Appeals on September 16, 1992. This order unquestionably terminated the action before the court. The doors of the court were closed to the Secretary, the action ended. Thus, under
 
 Finkelstein,
 
 the government may appeal such an order.
 

 Travelstead now contends that permitting appeal of Court of Veterans Appeals decisions that are not “final” (in the sense of ending litigation on the merits) would render “meaningless and superfluous” the certification procedure of 38 U.S.C. § 7292(b).
 
 [10]
 
 This contention is not
 
 *1249
 
 without merit.
 
 See Cabot Corp.,
 
 788 F.2d at 1543 (government failed to request certification of interlocutory order of the Court of International Trade). However, the possibility of certification does not distinguish the veteran’s benefits review process from that examined in
 
 Finkelstein.
 
 First-tier judicial review of Social Security disability benefits decisions is in the district courts, whose interlocutory decisions can also be certified for appeal under an almost identical statute, 28 U.S.C. § 1292(b). Although the
 
 Finkelstein
 
 opinion never mentioned the certification statute, the Court was undoubtedly aware of it.
 

 The principal directive of
 
 Finkelstein
 
 is that remands are not all of the same nature, Some are final; some are not. A remand was recognized there to be final under the statute involved and in order to ensure that the court of appeals was able to review an important legal question which the remand made effectively unre-viewable. The same situation exists here. Certification merely provides another possibility for review in appropriate circumstances. It does not preclude appeal in the circumstances of
 
 Finkelstein
 
 or of this case.
 

 THE MERITS
 

 Section 3713 of Title 38, captioned “Release from liability under guaranty,” provides for contemporary release at the time of transfer (subsection (a)), and for retroactive release should the transferee subsequently default (subsection (b)). The “retroactive release” provision states that:
 

 If any veteran disposes of residential property securing a guaranteed, insured, or direct housing loan obtained by the veteran under this chapter ... without receiving a release from liability with respect to such loan under subsection (a), and a default subsequently occurs which results in liability of the veteran to the Secretary on account of the loan, the Secretary may relieve the veteran of such liability if the Secretary determines,
 
 after such investigation as the Secretary deems appropriate,
 
 that the property was disposed of by the veteran in such a manner, and subject to such conditions, that the Secretary
 
 would have issued the veteran a release
 
 from liability under subsection (a) with respect to the loan
 
 if the veteran had made application therefor incident to such disposal.
 

 38 U.S.C.S. § 3713(b) (Law Co-op. Supp. 1992) (emphasis added). Subsection (a) requires,
 
 inter alia,
 
 that the transferee “qualif[y] from a credit standpoint, to the same extent as if the transferee were a veteran eligible ... for a guaranteed or insured or direct loan in an amount equal to the unpaid balance of the obligation.” 38 U.S.C.S. § 3713(a) (Law Co-op. Supp. 1992).
 

 The parties dispute what sort of evidence may be considered by the Secretary in deciding whether to deny a retroactive release. They divide the universe of information probative of the transferee’s creditworthiness into two categories — “pre-trans-fer” information and “post-transfer” information, with the relevant transfer being the sale of the involved property from the veteran to his transferee. The former information exists at the time of transfer and is exemplified by the transferee’s contemporary (at the time of transfer) credit history. The latter information is not extant at the time of transfer and is exemplified by the transferee’s post-transfer payment history.
 

 
 *1250
 
 The government contends that the statute gives the Secretary broad discretion to consider whatever information he “deems appropriate,” including post-transfer evidence. The government contends that the court’s decision completely forecloses the possibility of examining such information, impermissibly restricts the Secretary’s discretion, and raises unnecessary obstacles and pitfalls to his efficient and orderly administration of the statute. Citing the literal language of the statute, Travelstead contends that post-transfer information is by definition unavailable “incident to such disposal,” and cannot be considered by the Secretary.
 

 The Secretary’s implementing regulations, found at 38 C.F.R. § 36.4323(g) (1991), are similar to the language of the statute.
 
 [11]
 
 Paragraph 2.59(c) of VA Manual M26-3 (Manual M26-3), entitled “Loan Management and Servicing Policies, Procedures, and Methods; Loan Guaranty Operations for Regional Offices,” is more specific. It provides that a determination as to whether a transferee meets the credit requirements of the regulations “will usually be made through a retroactive credit-report,” which is “obtained from an acceptable credit reporting agency.” It cautions that when the transferee defaults “within a short period of time following transfer,” o: ’y “very unusual circumstances” will warrant a release, whether or not a credit report is obtained. It lists other factors to be considered when an accurate credit report is not obtainable, including a presumption of creditworthiness when there is no record of default within 12 months of transfer. It concludes that “[djoubtful cases should be resolved in favor of releasing the original veteran-borrower.”
 

 A.
 
 Standard of Review
 

 Legal interpretations of a statute by the Court of Veterans Appeals are reviewed
 
 de novo.
 
 38 U.S.C.A. § 7292 (1992);
 
 Prenzler v. Derwinski,
 
 928 F.2d 392, 393 (Fed.Cir.1991). However, regulations relating to an agency’s practice under a statute which it is charged to implement, issued pursuant to a statutory grant of authority, are of legislative effect and must be given controlling weight by this court unless they are arbitrary, capricious, or manifestly contrary to the statute.
 
 Chevron U.S.A. v. Natural Resources Defense Council, Inc.,
 
 467 U.S. 837, 843-44, 104 S.Ct. 2778, 2782-83, 81 L.Ed.2d 694 (1984);
 
 Batterton v. Francis,
 
 432 U.S. 416, 425-26, 97 S.Ct. 2399, 2405-06, 53 L.Ed.2d 448 (1977). In contrast, agency pronouncements that are merely interpretive are given lesser deference, varying with such factors as the timing and consistency of the agency’s position and the nature of its expertise.
 
 General Electric Co. v. Gilbert,
 
 429 U.S. 125, 141-42, 97 S.Ct. 401, 410-11, 50 L.Ed.2d 343 (1976);
 
 Skidmore v. Swift & Co.,
 
 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944).
 

 Here, the Secretary’s policy with respect to post-transfer information is contained in Manual M26-3, whose regulatory status (legislative or interpretive) is not entirely clear. Although § 3713 expressly grants the Secretary discretion to conduct whatever investigation he “deems appropriate,” he must do so within the confines of the statute. In any event, we need not decide precisely what level of deference must be afforded the Secretary’s pronouncements on this point. Even substantive rules cannot be promulgated that are contrary to statute. If the intent of Congress is clear, that is the end of the matter; both this court and the Secretary must give effect to the unambiguously expressed intent of Congress.
 
 Chevron,
 
 467 U.S. at 842-43, 104 S.Ct. at 2781-82. We conclude that the Secretary does not have discretion to rely only upon the fact of a transferee’s default within twelve months to deny a retroactive release under § 3713. Determination against a release on such a basis,
 
 *1251
 
 without examining the facts and making a reasoned judgment as to creditworthiness at the date of transfer, is prohibited by both the plain language of that statute and by its general purpose.
 

 B.
 
 The Use of Post-Transfer Information in Retroactive Release Decisions
 

 The retroactive release provision of § 3713(b) mandates a retrospective application of the criteria of § 3713(a) to a hypothetical application for release made
 
 at the time of transfer.
 
 The language of the statute requires that the Secretary determine whether he “would have issued the veteran a release from liability under subsection (a) with respect to the loan if the veteran had made application therefor incident to such disposal.” By definition, post-transfer evidence would not have been available “incident to such disposal.” However, such evidence may give rise to an inference respecting creditworthiness at the time of transfer.
 

 Congress considered the release provision remedial, forgiving a veteran’s failure to seek a contemporary release, and justified because “the position of the Veterans Administration would be substantially the same as it would have been if [the veteran] had previously obtained a release from liability to the Government under [subsection (a)].” H.R.Rep. No. 1125, 92d Cong., 2d Sess. 6 (1972),
 
 reprinted in
 
 1972 U.S.C.C.A.N. 2708, 2713. This is not a case where “Congress has not directly addressed the precise question at issue.”
 
 Chevron,
 
 467 U.S. at 843, 104 S.Ct. at 2782. The Secretary’s discretion to set the criteria for release thus does not permit an arbitrary conclusion based on post-transfer information alone concerning the transferee’s creditworthiness “at the time he or she acquired the property.” 38 C.F.R. § 326.-4323(g) (1991).
 

 Whenever possible, the Secretary should base his retroactive release decision on information that would have been available had application been made “incident to transfer.” Manual M26-3’s proviso that a transferee’s default “within a short period of time following transfer” is dispositive is not valid if there exists and is not considered a contemporary credit report. The entire purpose of the statute is to provide relief to the veteran upon his transferee’s default, when such relief yrould have been granted
 
 ab initio
 
 under § 3713(a). This purpose is undermined by permitting such default
 
 ipso facto
 
 to defeat the veteran’s right to a release. We reject any VA interpretation that frustrates the congressional policy underlying this statute.
 
 See SEC v. Sloan,
 
 436 U.S. 103, 118, 98 S.Ct. 1702, 1711-12, 56 L.Ed.2d 148 (1978);
 
 Horner v. Hollander,
 
 895 F.2d 759, 761 (Fed.Cir. 1990).
 

 The government contends that the court’s opinion forbids reliance upon post-transfer information where pre-transfer information is unavailable. It notes that
 
 post hoc
 
 assessments of the transferee’s creditworthiness are difficult to make, due to the loss or destruction of records and the reluctance of financial institutions to release non-current and therefore difficult to verify information. It suggests that compliance with the court’s decision would effectively foreclose the grant of retroactive releases in a substantial portion of pending and future applications.
 

 We do not read the court’s holding so broadly. The question whether post-transfer information may be used in such circumstances was neither before nor decided by the court. It merely reviewed the administrative record before it and concluded that the VA adjudication officer did not properly apply the law. The administrative record before the court consisted entirely of the check sheet entry, indicating a denial of retroactive release because the “transferee who assumed defaulted during 1st 12 mos; not considered satisfactory risk.” We do not know whether or to what extent the VA attempted to reconstruct the transferee’s contemporary credit record or to determine the reasons for the default by the transferee.
 
 [12]
 
 Rote invocation of a pre
 
 *1252
 
 sumption of uncreditworthiness is unacceptable. There are many reasons for missed mortgage payments. Some may have been forecast at the time of transfer and therefore may (or may not) have been indicative of uncreditworthiness. Some may be caused by post-transfer events. Only the former, if probative of creditworthiness, will sustain the Secretary’s denial of a retroactive release.
 

 What we decide here, however, is that to draw a conclusion of uncreditworthiness solely on the fact of post-transfer default, which may have been no more than a single late payment, is not reasonable and is contrary to the statute.
 
 [13]
 
 The Secretary must base his denial of a retroactive release on more complete information.
 

 CONCLUSION
 

 We affirm the Court of Veterans Appeals’ decision to remand to the Board of Veterans’ Appeals for an adjudication of Travelstead’s entitlement to a retroactive release under 38 U.S.C. § 3713(b).
 

 COSTS
 

 Costs to Travelstead.
 

 AFFIRMED.
 

 [1]
 

 . 38 U.S.C.S. § 3713(a) (Law Co-op. Supp.1992) provides in pertinent part that:
 

 ... the Secretary, upon application made by such veteran and by the transferee ... shall issue to such veteran in connection with such disposal a release relieving the veteran of all further liability to the Secretary on account of such loan ... if the Secretary has determined, after such investigation as the Secretary may deem appropriate, that (1) the loan is current, and (2) the purchaser of such property from such veteran (A) is obligated by contract to purchase such property and to assume full liability for the repayment of the balance of the loan remaining unpaid, and has assumed by contract all of the obligations of the veteran under the terms of the instruments creating and securing the loan, and (B) qualifies from a credit standpoint, to the same extent as if the transferee were a veteran eligible for purposes specified in section 3710 of this title, for a guaranteed or insured or direct loan in an amount equal to the unpaid balance of the
 
 *1246
 
 obligation for which the transferee has assumed liability.
 

 [2]
 

 . 38 U.S.C.S. § 5302(b) (Law Co-op. Supp.1992) provides in pertinent part that:
 

 With respect to any loan guaranteed, insured, or made under chapter 37 of this title ... the Secretary shall, except as provided in subsection (c) of this section, waive payment of an indebtedness to the Department by the veteran ... where the Secretary determines that collection of such indebtedness would be against equity and good conscience.
 

 [3]
 

 . Observing that Travelstead’s tendered financial statement showed a net income over fixed expenses of $508.91 per month, the Board concluded that ”[i]t is reasonable to expect that you give this debt to your government the same consideration you give your other debts and that repayment of this debt would not be against equity and good conscience and not create a
 
 severe
 
 hardship.”
 

 [4]
 

 . Certain sections of Title 38 were renumbered by Pub.L. No. 102-83, § 5(a), 105 Stat. 378 (Aug. 6, 1991) after the decision of the Court of Veterans Appeals. Section 3713 was previously 38 U.S.C. § 1813, which is cited by the court.
 

 [5]
 

 . This provision has since been renumbered 38 U.S.C. § 7052.
 
 See supra
 
 note 4.
 

 [6]
 

 . The appealed order of the Court of International Trade reversed the International Trade Administration’s finding that Mexico’s provision of carbon black feedstock and natural gas at government-set rates to two carbon black producers did not constitute a countervailable subsidy. It remanded the issue for "further investigation and redetermination” under a "competitive advantage” standard, which differed from the “generally available benefits” standard applied. 788 F.2d at 1541.
 

 [7]
 

 . Other courts of appeals had found such agency remands appealable by the government under the so-called "collateral order” exception of
 
 Cohen v. Beneficial Industrial Loan Corp.,
 
 337 U.S. 541, 546, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949), which permits appeals of orders that "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.”
 
 See Occidental Petroleum Corp. v. S.E.C.,
 
 873 F.2d 325, 328-32 (D.C.Cir.1989);
 
 Bender
 
 v.
 
 Clark,
 
 744 F.2d 1424, 1426-28 (10th Cir.1984);
 
 Stone v. Heckler,
 
 722 F.2d 464, 467 (9th Cir.1983). In
 
 Cabot Corp.,
 
 we found this exception inapplicable, noting that the legal matters determined in the Court of International Trade’s order, rather than being merely "collateral," went “to the heart of the case.” 788 F.2d at 1544. For a similar reason, the
 
 Cohen
 
 rationale is likewise inapplicable here.
 

 [8]
 

 . 42 U.S.C. § 405(g) (1988) provides in pertinent part:
 

 Any individual, after any final decision of the Secretary made after a hearing to which he was a party ... may obtain a review of such decision by a civil action ... The court shall have power to enter ... a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing ... The court may, on motion of the Secretary made for good cause shown ... remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary ...; the judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions.
 

 [9]
 

 . The standard for entitlement, found at 42 U.S.C. § 423(d)(2)(B) (1982), required that the widow or widower’s impairment be "of a level of severity which under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in any gainful activity.” The Secretary had, in Mrs. Finkelstein’s case, compared her heart condition with a schedule of so-called "listed impairments," without making any determination whether this condition precluded her from engaging in any gainful activity. The district court held the latter determination to be essential, and remanded to the Secretary to make it.
 

 [10]
 

 . The statute providing for certification of Court of Veterans Appeals orders not otherwise appealable is almost identical to that applicable
 
 *1249
 
 to the district courts (28 U.S.C. § 1292(b)). It provides in pertinent part that:
 

 When a judge or panel of the Court of Veterans Appeals, in making an order not otherwise appealable under this section, determines that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that there is in fact a disagreement between the appellant and the Secretary with respect to that question of law and that the ultimate termination of the case may be materially advanced by the immediate consideration of that question, the judge or panel shall notify the chief judge of that determination. Upon receiving such a notification, the chief judge shall certify that such a question is presented, and any party to the case may then petition the Court of Appeals for the Federal Circuit to decide the question.
 

 38 U.S.C.S. § 7292(b)(1) (Law Co-op. Supp. 1992).
 

 [11]
 

 . This regulation provides in pertinent part that:
 

 ... the Secretary may relieve the veteran of such liability if he determines that:
 

 (1) A transferee either immediate or remote is legally liable to the Secretary ... and
 

 (2) The original loan was current at the time such transferee acquired the property, and
 

 (3) The transferee who is liable to the Secretary is found to have been a satisfactory credit risk at the time he or she acquired the property-
 

 [12]
 

 . Indeed, the government's attorney conceded at oral argument that a denial of release based upon a "technical" default, such as a single late payment, would be an abuse of the Secretary’s
 
 *1252
 
 discretion. He likewise conceded that in this case an agency remand was necessary to determine the nature of the transferee’s default.
 

 [13]
 

 . In contrast, Manual M26-3 provides for a presumption of creditworthiness, based upon a record of no default within 12 months of transfer, in cases where contemporary credit information is unavailable. Such evidence clearly gives rise to a reasonable inference of creditworthiness at the time of transfer, is well within the Secretary’s discretion, and both complies with the statute and implements its purpose.