[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-14287

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MORGAN LAMAR MCCANTS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:22-cr-00117-TFM-MU-1

_____

Before NEWSOM, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Morgan Lamar McCants appeals his 84-month, above guideline range sentence, which the district court imposed after he pleaded guilty to one count of possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). In support, he raises two points. First, he argues that the district court erred in applying a four-level enhancement for using or possessing a firearm in connection with another felony. Second, he argues that his sentence is substantively unreasonable. After careful review, we affirm.

## I.    Background

In June 2022, McCants was charged with being a felon in possession of a firearm (Count One), and being a felon in possession of ammunition (Count Two), both in violation of 18 U.S.C. § 922(g)(1). McCants pleaded guilty, pursuant to a written plea agreement, to Count 1 in exchange for dismissing Count 2.

McCants's presentence investigation report ("PSI") described his offense conduct as follows. In August 2021, the Mobile Police Department ("MPD") responded to a gas station shooting between two individuals. McCants was one of the individuals involved in the shooting. Officers were shown a surveillance video, which revealed that McCants had fired shots with a small pistol at Quince Ervin, who returned fire with a shotgun. McCants was not on scene when the officers arrived, but the officers recovered four shell casings from the scene.

Later that month, MPD detectives located McCants while on patrol. McCants had a backpack containing a 9mm pistol, which MPD linked to three of the four shell casings they had recovered from the scene of the gas station shooting. Because McCants was previously convicted of a felony, he was indicted for being a felon in possession of a firearm and possession of ammunition.

McCants was assigned a base offense level of 14. Four points were added pursuant to U.S.S.G. § 2K2.1(b)(6)(B) because McCants "used or possessed the firearm in connection with another felony offense"—the gas station shooting. Three points were subtracted related to McCants's acceptance of responsibility. The resulting total offense level was 15. McCants was also assigned a criminal history score of 15, which put him in a criminal history category of VI. With a total offense level of 15, and a criminal history category of VI, McCants's guideline range was 41–51 months' imprisonment. The statutory maximum term of imprisonment was 120 months' imprisonment.

Prior to sentencing, McCants objected to the four-level enhancement for possessing a firearm in connection with another felony. Specifically, McCants contended that, contrary to the description of events in the PSI, he "was not the aggressor in the [gas station shooting] incident and did not commit a felony."

At sentencing, the government responded to McCants's objection by calling Special Agent Nick Murphy as a witness. Murphy had reviewed the surveillance video of the shooting and described it to the court as follows. McCants approached a black

vehicle surrounded by several individuals at a busy gas station. One of the individuals was Ervin, with whom McCants was apparently in a dispute. As McCants approached Ervin, Ervin exited the black vehicle and went around the back of the vehicle. At that point, McCants produced a pistol. He then started to retreat after seeing Ervin produce a shotgun. While muzzle flashes could not be seen in the video, three pistol casings and one shotgun casing were found on the scene, suggesting that McCants fired three times and Ervin fired once. McCants also appeared to shoot at Ervin while Ervin was driving away. On cross-examination, Murphy admitted that he did not know the details of the dispute between Ervin and McCants.

The government then argued that this incident showed that McCants committed a felony—attempted assault or attempted murder—and thus the four-level enhancement was appropriate.

McCants then called Metissa Ann Lewis Leach to the stand, the mother of McCants's girlfriend. Leach described a previous fight between Ervin and McCants that she had to break up, in which Ervin pulled a shotgun on McCants. Ervin had later fired a shotgun at the home that McCants, his girlfriend, and Leach were living in at the time. After this, Ervin and his brother began stalking McCants and his girlfriend, resulting in several incidents that were reported to the police.

McCants then testified on his own behalf. He said that he was friends with Ervin until they got into an argument. The day after the argument, Ervin saw McCants and his girlfriend and

pointed a shotgun at McCants. When McCants's girlfriend stood between the two men, Ervin yelled "[m]ove out of the way . . . so I can shoot him." The next day, Ervin drove by McCants and was yelling at McCants. Ervin then stopped "like four houses down" and was "fixing to run to the house to get [a] gun." So McCants ran after him and tackled him, and a fight ensued. Later that day, Ervin shot a gun at the house McCants was staying at with his girlfriend.

McCants then described other incidents with Ervin. During one, Ervin and his brother had driven down McCants's street playing loud music and hanging out of the windows with pistols. During another incident, McCants and his girlfriend were returning from the store, when Ervin drove up, chambered a round, and said "I've got you now." McCants then ran off. McCants testified that Ervin's actions were "ongoing," because every time he would return home, he would find shell casings in the yard from someone shooting towards the house. One time, he and his girlfriend had been in their home when someone had tried to pull the air-conditioner unit out of their window to get into their house.

Addressing the incident at the gas station, McCants testified that he had been hanging out at the gas station with his girlfriend and others when he noticed Ervin's car. McCants's girlfriend approached Ervin's car, trying to preemptively deescalate things. McCants did not have a firearm on him at this time, but a person at the gas station gave him a pistol, telling him to hold onto it "in

case you feel anything go wrong."  McCants had then "calm[ly]" walked towards the vehicle without drawing the pistol.  But when he saw Ervin dive towards the vehicle, he knew that Ervin was retrieving the shotgun.  When Ervin pulled out the shotgun, McCants brandished the pistol and took cover because he knew that Ervin would shoot.  McCants's girlfriend tried to calm things down, asking why they did not "kill the little beef," but Ervin had gotten "loud and feisty" with her by responding that the "only way I kill it is if I kill him."  That made McCants step out from cover to see what was happening, as he thought Ervin was "getting feisty" with his girlfriend.  Ervin then took out the shotgun and fired at McCants.  McCants testified that he thought his girlfriend was in trouble, and that he only had the pistol to defend himself.

Finally, McCants described an incident between him and Ervin that occurred after the gas station incident.  Ervin approached McCants while McCants was parked at a gas station and started shooting at McCants.  McCants was shot in the arm.

McCants's girlfriend also testified, confirming McCants's version of events.  She testified that, while she was talking with Ervin, he had not been violent with her, but was "high style verbally."  She also testified that, when McCants approached them, he did not have a weapon in hand, but instead was smoking a cigarette.

McCants then argued that the court should remove the four-point enhancement because McCants was acting in self-defense, and that the court should sentence him to the low end of the

guideline range. The government argued that McCants's actions satisfied the elements of attempted assault and attempted murder under Alabama law, and so the four-level enhancement was appropriate.

The court overruled McCants's objection and adopted the PSI. It then sentenced McCants to 84 months' incarceration. The court found that the "guidelines range [wa]s inappropriate to the facts and circumstances of th[is] case and would not provide a reasonable sentence." The court noted that, rather than leave when he noticed Ervin's car, McCants "decided to stay and he decided to escalate it." The court said that this was not the "wild west," and found that McCants had initiated the incident at the gas station when he "approached the vehicle," at which point Ervin shot back at him. The court also noted that McCants was a felon and "particularly the person this law [was] designed at getting after their conduct." The district court then stated, "[t]he guidelines are advisory, and I decline to apply them. If I applied them, I would still impose the same sentence." The court found that the sentence addressed "the seriousness of the offense and the sentencing objectives of punishment, deterrence, and incapacitation."

McCants objected, without success, to the court sentencing him above the guideline range. The court noted that it was "giving him an 84-month sentence instead of a 120-month sentence" because he pleaded guilty. But the court pointed out that it was "surprised that in the heat of this gun fight, that there were not

other [innocent] people . . . who were . . . hurt or killed." McCants appealed.

## II.    Discussion

McCants makes two arguments on appeal. First, he argues that the district court erred in applying a four-level enhancement for using or possessing a firearm in connection with another felony, pursuant to U.S.S.G. § 2K2.1(b)(6)(B). Second, he argues that his sentence is substantively unreasonable. After careful review, we affirm on both issues.

A.   *Whether the district court clearly erred in applying a four-level enhancement for using a firearm in connection with another felony.*

McCants argues that the district court clearly erred in applying a four-level enhancement for using or possessing a firearm in connection with another felony. He contends that he was not the initial aggressor in the encounter with Ervin, so he did not commit attempted assault. We disagree.

When appropriate, we will review a district court's legal interpretations *de novo*, and its factual findings for clear error. *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010). When "a defendant objects to a fact contained in the PSI, the government bears the burden of proving that disputed fact by a preponderance of the evidence." *United States v. Martinez*, 584 F.3d 1022, 1027 (11th Cir. 2009).

The Guidelines provide for a four-level enhancement when a defendant used or possessed a firearm "in connection with

another felony offense[.]"    U.S.S.G.  § 2K2.1(b)(6)(B).    The Guidelines commentary defines "another felony offense" as "any federal, state, or local offense, other than the . . . firearms possession . . . offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained."    Id. § 2K2.1, comment. (n.14(C)).

In Alabama, a person commits assault in the first degree if, "[w]ith intent to cause serious physical injury to another person, he or she causes serious physical injury to any person by means of a deadly weapon," or if "[u]nder circumstances manifesting extreme indifference to the value of human life, he or she recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes serious physical injury to any person[.]"  Ala. Code § 13A-6-20(a).  A firearm is considered a deadly weapon under Alabama law.  Id. § 13A-1-2(7).  Assault in the first degree is a Class B felony.  Id. § 13A-6-20(b).  Under Alabama law, a "person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he or she does any overt act towards the commission of the offense."  Id. § 13A-4-2.  Attempt is a Class C felony if the offense attempted is a Class B felony.  Id.

The district court did not clearly err in applying a four-level enhancement under § 2K2.1(b)(6)(B).  The testimony at sentencing reflected that McCants: witnessed Ervin arrive at the gas station; accepted a firearm from a person on the scene; approached Ervin, who was speaking non-violently with McCants's girlfriend;

initiated an encounter during which he fired at least three shots at a crowded gas station; and appeared to shoot at Ervin as Ervin drove away. The district court could have reasonably concluded that this conduct not only demonstrated an intent to cause serious physical injury to Ervin with a deadly weapon, but also demonstrated reckless conduct that created a grave risk of death to those nearby. Thus, the district court could have reasonably concluded that the government established by a preponderance of the evidence that McCants's conduct satisfied the elements of attempted assault in the first degree under Alabama law, a Class C felony punishable by imprisonment for "not more than 10 years or less than one year and one day."[1] Ala. Code §§ 13A-1-2; 13A-4-2; 13A-6-20(a); 13A-5-6(a)(3); 13A-6-20(a), (b). Accordingly, the district court did not clearly err in determining, by a preponderance of the evidence, that McCants used or possessed a firearm "in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B).[2]

---

[1] McCants argues for the first time on appeal that the district court's statement that McCants should have retreated "runs contrary to Alabama's Stand Your Ground Law, which abrogates the requirement to flee from 'any place where [a person] has the right to be.'" However, the Alabama Stand Your Ground law does not apply when the person claiming self-defense was the initial aggressor. Ala. Code § 13A-3-23(c)(2). And based on the video evidence and testimony, the district court did not clearly err in determining, by a preponderance of the evidence, that McCants was the initial aggressor.

[2] Aside from arguing that the district court did not clearly err in applying the four-point enhancement, the government makes two other arguments. First, the government argues that McCants's plea agreement contained an appeal

*B. Whether McCants's sentence is substantively unreasonable.*

McCants argues that his above-guideline sentence of 84 months' imprisonment is substantively unreasonable. We disagree.

We review the substantive reasonableness of sentencing decisions under the deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). The party challenging the sentence bears the burden of showing that the sentence is unreasonable in light of the record, the factors listed in § 3553(a), and "the substantial deference afforded sentencing courts." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015).

Under this standard, we may affirm a sentence even though we would have imposed a different sentence had we been in the district court's position. *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*). A district court abuses its discretion at sentencing "when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *Id.*

---

waiver which prevents him from challenging the four-level enhancement on appeal, notwithstanding the waiver's exception that permits McCants to appeal any sentence in excess of the guidelines range. Second, the government argues that any sentencing error was harmless because the district court said it would have applied the same sentence regardless of the guidelines. Because we determine there was no sentencing error, we need not reach either argument.

We will vacate a district court's sentence "only if we are left with the 'definite and firm' conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that is outside the range of reasonable sentences dictated by the facts of the case." *United States v. Goldman*, 953 F.3d 1213, 1222 (11th Cir. 2020) (quoting *Irey*, 612 F.3d at 1190). "A district court has considerable discretion in deciding whether the § 3553(a) factors justify a variance and the extent of one that is appropriate." *United States v. Oudomsine*, 57 F.4th 1262, 1266 (11th Cir. 2023) (quotations omitted). Further, we "do not presume that a sentence outside the guidelines range is unreasonable and . . . must give due deference to the district court's decision that the § 3553(a) factors support its chosen sentence." *Id.* at 1267.

The "overarching" instruction to sentencing courts in 18 U.S.C. § 3553 is that any sentence, whether within the guideline range or a variance, must be sufficient but not greater than necessary to comply with the purposes listed in § 3553(a)(2). *Kimbrough v. United States*, 552 U.S. 85, 101 (2007); 18 U.S.C. § 3553(a). The proper factors as stated in § 3553(a) include the nature and circumstances of the offense, the personal history and characteristics of the defendant, the seriousness of the crime, the promotion of respect for the law, just punishment, and adequate deterrence. 18 U.S.C. § 3553(a)(1)–(2). The court must also consider the applicable guidelines range, any pertinent policy statements from the Sentencing Commission, the need to avoid unwarranted sentencing disparities between similarly situated

defendants, and the need to provide restitution to any of the defendant's victims. *Id.* § 3553(a)(1), (3)–(7).

We have "previously stated that a district court can rely on factors in imposing a variance that it had already considered in imposing a guideline enhancement." *United States v. Overstreet*, 713 F.3d 627, 639 (11th Cir. 2013) (alterations adopted) (quotations omitted). The district court also does not have to give all the factors equal weight and is given discretion to attach great weight to one factor over another. *Rosales-Bruno*, 789 F.3d at 1254. Instead, the weight due each § 3553(a) factor lies within the district court's sound discretion, and we will not substitute our judgment for that of the district court. *United States v. Joseph*, 978 F.3d 1251, 1266 (11th Cir. 2020). However, we have cautioned that "[u]pward variances are meant to apply only after 'serious consideration' by the sentencing court, and only then when accompanied by a 'sufficiently compelling' justification." *United States v. Brown*, 879 F.3d 1231, 1240–41 (11th Cir. 2018) (quoting *Gall*, 552 U.S. at 46, 50).

The district court did not abuse its discretion in sentencing McCants to an above-guidelines 84 months' imprisonment, as the specific facts of this case warranted a more serious sentence. As the district court recounted, McCants, while armed with a firearm, initiated a confrontation with Ervin, whom he knew had a propensity towards firearm violence, while in a busy public place of business. He then further endangered the public by engaging in a shootout with Ervin. Thus, the district court determined that the

sentence appropriately "addresse[d] the seriousness of the offense and the sentencing objectives of punishment, deterrence, and incapacitation." While McCants provided some potentially mitigating information related to the prior actions of Ervin, the weighing of these factors was firmly committed to the district court's discretion, and we shall not substitute our judgment in its place. *See Joseph*, 978 F.3d at 1266. Moreover, McCants's sentence is well below the statutory maximum of 10 years' imprisonment, which is an indicator of reasonableness. *See United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (explaining that a sentence that is below the statutory maximum is an indicator of reasonableness). Accordingly, we conclude that McCants's sentence is substantively reasonable, and we affirm the district court.

**AFFIRMED.**